**3 So.2d 244**

**FLOURNOY, Sheriff, et al. v. FIRST NAT. BANK OF SHREVEPORT,**

No. 36148.

May 26, 1941.

Booth & Lockard and Jackson & Mayer, all of Shreveport, for plaintiffs and appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for defendant and appellee.

Eugene Stanley, Atty. Gen., W. D. Goff, First Asst. Atty. Gen., and James H. Trousdale, Jr., of Monroe, for Rufus W. Fontenot, Director of Revenue, amicus curiae.

HIGGINS, Justice.

The facts and the issues in these two cases being identical, they were consolidated and tried together.

The sheriff and ex-officio tax collector of the Parish of Caddo and the tax collector of the City of Shreveport instituted summary proceedings against the First National Bank of Shreveport to enforce the payment of the taxes extended and levied against its shareholders upon what is asserted to be a supplement to the tax rolls for the year 1939.

In its answers to the suits, the defendant set up the following defenses:

(1) That, as the Legislature of Louisiana authorizes the taxing of the shares of stock of national banks by permission of Congress only, and not by virtue of its inherent powers, and as it acts independently of the Constitution of the State in authorizing the assessment of the shares of stock of national banks, Act 172 of 1938 (which was declared unconstitutional by this Court on March 4, 1940, in the case of the Hibernia National Bank et als. v. Louisiana Tax Commission, et als., 195 La. 43, 196 So. 15) is unconstitutional as to state banks but not unconstitutional as to national banks;

(2) That Act 172 of 1938 had legal and binding effect until it was declared uncon-

stitutional by this Court on March 4, 1940, and as the original assessment was made and the taxes collected prior to the above date, the question of the defendant's tax liability for the year 1939 was concluded; and

(3) That the alleged supplemental assessment was a mere reassessment or revaluation of the property already assessed and, therefore, was in no way or sense a supplemental assessment of property omitted or improperly or erroneously assessed within the meaning of Section 12 of Act 170 of 1898, as amended by Act 69 of 1908.

There was judgment in favor of the defendant and the plaintiffs appealed.

The State Director of Revenue, now charged with the assessment duties formerly exercised by the Louisiana Tax Commission, through the Attorney General filed a brief as amicus curiae, stating that this Court in the case of Hibernia National Bank et al. v. Louisiana Tax Commission et al., supra, compelled the Whitney National Bank, the National Bank of Commerce and the Hibernia National Bank to pay the taxes on the same type of property here sought to be taxed and that other banks have voluntarily paid the taxes but that there are several banks which have refused to pay the taxes and additional suits are pending covering the identical issues here involved. The two State officials join the plaintiffs in asking for judgment in favor of the validity of the tax.

In the instant case, the tax assessor for Caddo Parish in obedience to the order of the Louisiana Tax Commission in orig-

inally assessing the shares of stock of the defendant, the First National Bank of Shreveport, for the year 1939, followed the provisions of Act 172 of 1938 and did set aside from the value of the shares of stock the sum of $1,000,000 the amount of the par value of the capital stock of the bank as exempt and not subject to taxation. The assessment for that year was as follows:

14 of 1917, Ex.Sess., as amended by Act 6 of the Regular Session of 1934.

The pertinent part of Section 4 of Act 6 of 1934, reads as follows:

"Section 4. That the basis for arriving at the value of the said shares of stock in any bank, banking company, firm, association, or corporation engaged in the

| | | |
|---|---|---|
| Capital stock | $1,000,000.00 | |
| Surplus | 1,000,000.00 | |
| Undivided profits | 75,490.46 | |
| | | |
| Total | | $2,075,490.56 |
| Deductions: | | |
| Less assessed value of real estate | 77,892.00 | |
| Less assessed value of real estate owned by corporations, the capital stock of which was owned by First National Bank, substantially all of the assets of which consisted of real property acquired for debts | 443,880.00 | |
| Less amount set aside as exempt under Sec. 2 of Act 172 of 1938 | 1,000,000.00 | |
| | | |
| Total Deductions | | $1,521,772.00 |
| | | |
| Leaving a taxable balance of (counted as $553,-720.00) | | $ 553,718.56 |

On December 28, 1939, the defendant made payment of its taxes as set forth on the tax roll and received a receipt therefor from the tax collector. On August 8, 1940, several months after Act 172 of 1938 had been declared unconstitutional by this Court (Hibernia National Bank et al. v. Louisiana Tax Commission et al., supra), the Louisiana Tax Commission directed the assessor of the Parish of Caddo to make supplemental assessments against all the banks in Shreveport, including the defendant, under the provisions of Act

banking business shall be the value of said stock as shown by the statements of said bank, banking company, firm, association, or corporation, made to the Comptroller of the Currency and required to be published, in the case of banks, banking companies, firms, associations, or corporations, created under the laws of the United States, * * *."

Section 4 of Act 172 of 1938, which was declared unconstitutional, provided in part as follows:

"Section 4. That the value of the said shares of stock in any bank, banking company, firm, association, or corporation engaged in the banking business shall be fixed annually by the Louisiana Tax Commission for both State and local assessment purposes, and shall not exceed the par value of said shares of stock, plus any amount in which the combined declared surplus, undivided profits and contingent reserves of any such banking institution may exceed the par value of the common capital thereof; * * *."

The supplemental assessment of the tax assessor of Caddo Parish was made under a resolution of the Louisiana Tax Commission, reading as follows:

"Therefore, be it resolved that a supplemental assessment roll be issued according to law covering the stock of the following banks in Caddo Parish:

| Name of Bank | Town | Amount of Increase |
| --- | --- | --- |
| First National Bank of Shreveport | Shreveport | $973,420.00." |

The tax assessor, in making the supplemental assessment, considered the property placed thereon as either having been omitted or improperly or erroneously assessed and that he was, therefore, authorized by the provisions of Section 12 of Act 170 of 1898, as amended by Act 69 of 1908, to supplement the original tax roll of 1939. In accordance with the requirements of that section of the statute, the tax assessor, on August 16, 1940, addressed to the defendant, by registered mail, a notice of the supplemental assessment. The defendant did not contest this assessment within the ten day period provided in the statute. On August 28, 1940, the tax collector filed a copy of the supplemental roll with the recorder of mortgages in and for the Parish of Caddo, and served copies thereof on the Louisiana Tax Commission and the State Auditor and also filed a copy with the sheriff as ex-officio tax collector for the Parish of Caddo. On September 10, 1940, the tax collector of Caddo Parish gave notice to the defendant, by registered mail, of the delinquency under the supplemental assessment. When the defendant failed to pay the tax as set forth by the supplemental assessment, these summary suits to compel payment were instituted.

Is Act 172 of 1938 unconstitutional as to state banks, but constitutional as to national banks?

The defendant answers this question in the affirmative on the theory that the Legislature derived its authority to assess and collect taxes on the shares of stock of national banks from the Act of Congress restrictively permitting such taxation and not from the constitutional grant to the Legislature of the inherent powers of the sovereign state to levy taxes.

The Act of Congress permitting states to tax the shares of stock of national banks is merely a waiver of the immunity against taxes being assessed on that type of property. With the immunity eliminated, the only way the Legislature could have legally placed a tax upon the shares of stock of national banks, as property then subject to taxation, would be through the

authority to tax delegated to the Legislature by the Constitution of the Sovereign State. The Congress having eliminated the immunity from taxation of shares of stock of national banks, such property became subject to the taxing power of the State acting through the Legislature, which had authority to tax the property under the Constitution of the State but did not have the right to exempt the property from taxation.

It is said the Act 172 of 1938 is separable and therefore, in so far as national banks are concerned, it is constitutional and only unconstitutional in relation to state banks.

Even if it be conceded that there is sufficient difference between the shares of stock of national banks and the shares of stock of state banks, for the purpose of classification by the Legislature in taxation matters, so as not to offend against the constitutional requirement of uniformity of tax laws, it suffices to say that the Legislature did not make such a distinction between the two, because Act 172 of 1938 treats both types of bank stock alike and makes no differentiation or discrimination between them.

It is observed that for many years, as shown by Act 14 of 1917, Ex.Sess., as amended by Act 116 of 1922, and by Act 221 of 1928 and Act 6 of 1934 (Reg.Ses.), and Act 172 of 1938, the legislative policy of this state has been to maintain uniformity in the taxation of shares of bank stock, both state and national.

In the case of the City of Alexandria v. Hall, 171 La. 595, 131 So. 722, 724, the Court said:

"It is well settled that a statute may be valid in part and invalid in part, and that the invalid part may be disregarded altogether and the other part constitute a valid statute, if the two parts are not so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other."

Act 172 of 1938 contains no severability clause. There is no mention therein whatsoever of shares of national bank stock. The Act does not make any distinction between shares of stock of state or national banks. It sets out no line of demarcation and in no wise indicates that the Legislature was considering separately the shares of stock of state banks or national banks. There is nothing contained in the statute which can be pointed to as raising the presumption that if the members of the Legislature had known that the features therein pertaining to state banks would thereafter be declared unconstitutional, it was their intention that the act stand as affecting national bank shares only.

In the instant case, the defendant bank will not have to pay approximately $30,000 of taxes if its position is maintained. It is very easy to see that this would be a most favorable discrimination in favor of national banks. It is difficult to understand how it can be said that the Legislature, which has heretofore consistently observed strict uniformity in taxing shares of stock of national and state banks alike, has changed that policy without any indication of its intention to do so either expressed or implied in the statute.

The point that our decision in the Hibernia Bank case, supra, is limited in its application to only those litigants who were before the court, because the facts were stipulated there, is of no moment, as plaintiffs have specially tendered the issue of constitutionality, pointing out the ground of unconstitutionality insofar as this case is concerned. The new matter urged here by the defendant and not considered by this Court in its previous decision holding the statute unconstitutional does not in any way change the situation as presented in the Hibernia Bank case, and it is our opinion that Act 172 of 1938 is unconstitutional as to exemptions granted on the assessment and collection of taxes on shares of stock of national banks as well as on the assessment and collection of taxes on shares of stock of state banks.

Under its second defense, counsel for the defendant takes the position that while the statute may be unconstitutional, it had legal efficacy and validity until it was held unconstitutional by the Court and, as the bank paid its taxes under the original assessment on December 28, 1939, or several months before Act 172 of 1938 was declared unconstitutional, this payment concluded the transaction and prevented the State from making the additional assessment.

The plaintiffs contend that the original assessment, insofar as it failed to assess $1,000,000 of property belonging to the shareholders of the bank, was predicated solely on an unconstitutional statute and, therefore, the payment of the tax thereunder had no binding effect nor did it prevent the state and its subdivisions from collecting taxes on property illegally exempt by the assessor upon the original assessment, because the statute, being unconstitutional, was void ab initio, and the acts of the assessor thereunder and the act of the bank in paying thereunder had no validity and conferred no immunity against the state and its subdivisions making a supplemental assessment so as to cover property omitted from the assessment or erroneously or improperly assessed.

In the case of Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 1125, 30 L. Ed. 178, 179, page 186, the Supreme Court of the United States stated that an unconstitutional statute is no law; that it is always unconstitutional; and that the judgment of the court declaring it so is simply judicial recognition that the Legislature had transcended the provisions of the Constitution. We quote from the language of the Court:

" * * * An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

In the case of Chicago, Indianapolis & Louisville Railway Co. v. Hackett, 228 U. S. 559, 33 S.Ct. 581, 584, 57 L.Ed. 966, at page 969, the same Court, having declared a statute unconstitutional, said:

" * * * That act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."

The general rule is well stated in Volume XI, American Jurisprudence, verbo "Constitutional Law," Sec. 148, page 827, as follows:

"The general rule is that an unconstitutional statute, though having form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted. Moreover, a construction of a statute which brings it in conflict with the Constitution will nullify it as effectually as if it had, in express terms, been enacted in conflict therewith.

"Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and justifies no acts performed under it. No one is bound to obey an unconstitutional law and no courts are bound to enforce it because only the valid legislative intent becomes the law to be enforced by the courts.
\* \* \*

"A contract which rests on an unconstitutional statute is void and creates no obligation to be impaired by subsequent legislation."

■ Under the heading of Constitutional Law, 16 C.J.S., § 101, page 290, we find the following statement:

"Acts Done under Unconstitutional Statutes. \* \* \* As a general rule, all acts done under an unconstitutional law are void and of no effect, but acts that are merely incidental to an unconstitutional legislative enactment, it seems, may be valid. The legislature may direct payment of expenses incurred under an unconstitutional statute \* \* \*.

"Official acts. \* \* \* Although the rule that an unconstitutional law is a nullity cannot be applied to work hardship and impose liability on a public officer who, in performance of his duty, has acted in good faith in reliance on the validity of a statute before any court has declared it invalid, in the absence of such circumstances, an unconstitutional law affords no protection to officers who act under it, and officers cannot be punished for refusing to obey such a statute. \* \* \*

"[Judgments.] Judgments and decrees rendered in the course of judicial proceedings under unconstitutional statutes are, according to some authority, void and should be reversed. By other authority, a judgment in a civil action under an unconstitutional statute is not void but merely voidable, and if such judgment becomes final before the statute is declared unconstitutional, it is valid and binding and cannot be disturbed, unless it is void or voidable for some other reason, at least, where the court had jurisdiction of the parties and of the subject matter and had power to render the particular judgment. Where, however, all the proceedings have not been completed before the statute purporting to give jurisdiction is held unconstitutional, and all the parties are before the court, relief from such proceedings under the statute should be granted."

In Corpus Juris Secundum, Constitutional Law, Vol. 16, § 101, at page 290, we find the following statement:

"As a general rule, all acts done under an unconstitutional law are void and of no effect. * * *"

Due to the fact that situations may arise resulting from transactions and acts performed under an unconstitutional statute, whereby the parties involved are placed in positions where it would be most unequitable to follow the general rule that an unconstitutional statute was void ab initio and without any legal effect whatsoever, or where it was impossible for the court to undo what had transpired under an unconstitutional statute and to restore the parties to some reasonable position, the courts have recognized exceptions to the rule as a matter of public policy or necessity in such instances.

In the case of Chicot County Drainage District v. Baxter State Bank et al., 308 U.S. 371, 60 S.Ct. 317, 318, 84 L.Ed. 329, the United States Supreme Court said:

"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. Norton v. Shelby County, 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 [186]; Chicago, I. & L. R. Co. v. Hackett, 228 U.S. 559, 566, 33 S.Ct. 581, 584, 57 L.Ed. 966 [969]. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, —with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations, deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified. * * *"

Counsel for the defendant state that this Court has recognized an exception to the general rule and relies upon the cases of Factors' & Traders' Ins. Co. v. City of New Orleans, 25 La.Ann. 454, and Berry et al. v. Bass, et al., 157 La. 81, 102 So. 76.

In the first case, the plaintiff sued the City of New Orleans to recover the sum of $10,175.56, representing the amount of license taxes paid to the defendant during the years 1867, 1868 and 1869, on the ground that the ordinance under which the tax was levied was unconstitutional.

The City pleaded that there was a natural obligation on the part of the taxpayer to support the City government, because it received benefits therefrom and, therefore, after its money went into the fisc of the City and was expended for public purposes, the plaintiff should not be permitted to recover. A divided court held that an unconstitutional statute could neither impose a legal nor natural obligation to pay taxes and, therefore, affirmed the judgment of the lower court granting recovery. On rehearing, a divided court, after discussing the benefits derived by the taxpayer from the government and that there was a natural obligation to support the government, and that as the money had been placed in the public fisc and expended, held that the plaintiff was not entitled to relief. The court, in its opinion, then went on to say "* * * another reason why the plaintiff should not recover" was because the ordinance was presumed to be constitutional until it was declared unconstitutional by the court and therefore the acts of the public officials thereunder should be given legal efficacy.

In the second cited case, the plaintiff sued the mayor and the town marshal to recover damages for false imprisonment and arrest. The Supreme Court annulled the judgment of the district court and dismissed the plaintiff's suit on the ground that the officers had acted in the utmost good faith and fairness in the discharge of their duties under the statute presumed to be constitutional and, therefore, were not liable, citing the case of Factors' & Traders' Ins. Co. v. The City of New Orleans, supra.

In the first cited case, the court ultimately concluded that there was a natural obligation for the taxpayer to pay the taxes which it did without coercion, and as it had received the benefits of government, it could not recover taxes paid under the unconstitutional statute. In the instant case, just the converse is true. There was at all times both a legal and a natural obligation for the defendant to pay the taxes, which it failed to do on account of an unconstitutional exemption.

In the second cited case, the two officers in discharging their duties and responsibilities under their oath of office enforced the law fairly and impartially but were sued for damages because the statute under which they acted subsequently was held to be unconstitutional. The strongest considerations of equity are apparent in favor of relieving public officials caught in such a dilemma when they have acted honestly and without malice and solely in the performance of their duties as required by the law, which was presumed to be constitutional.

In the instant case, the sole claims against the defendant are for taxes which it should have paid under the laws of this State at the outset, and as it was a legal and a natural obligation for the defendant to pay these taxes as a contribution of its share for the benefits of government which it received, we fail to see how the defendant can successfully urge a rule predicated upon considerations of equity. Furthermore, the transactions with reference

to the tax in this case have not placed the parties in a situation where it is impossible to restore them to some reasonable position that they might have been entitled to occupy in the absence of the unconstitutional statute, for it is obvious that the bank, as the instrumentality or agency of the shareholders, owed taxes on the property now sought to be assessed from the beginning and all that can be said here is that it is subsequently being compelled to pay certain taxes which, under the law, it was originally obligated to pay.

The third defense involves the applicability of the provisions of Section 12 of Act 170 of 1898, as amended by Act 69 of 1908, which reads:

"* * * That if any tract or lot of land, or *other property shall be omitted in the assessment of any year, or series of years, or in any way erroneously assessed, the same, when discovered, shall be assessed by the assessor, or tax collector for the whole period of which the same may have been omitted or improperly assessed, and shall be subject to the State, parish, municipal and levee taxes,* which have been, or may hereafter be assessed against said property in accordance with law; *provided, no back taxes for more than three years shall be assessed against said property;* and provided further, that such assessments shall appear upon a supplemental roll and be filed in the manner as regular tax rolls. * * *" (Italics ours.)

Was the $1,000,000 of property exempt by the assessor on the roll for 1939 "omitted property" or property "improperly or erroneously" assessed within the meaning of the above section of the statute?

The difference between the contentions of the respective parties to this litigation, in its final analysis, is that the plaintiffs contend that by the supplemental assessment an unconstitutional exemption of property from taxation is circumvented by placing on the supplemental tax roll property either omitted, or erroneously, or improperly assessed, while the defendant contends that the supplemental assessment is a mere revaluation or reassessment of property already assessed and upon which original assessment the tax was previously paid.

In the case of the Hibernia National Bank et al. v. Louisiana Tax Commission et al., supra [195 La. 43, 196 So. 19], we said:

"The question presented under the alternative plea is, does the provisions of Section 4 of Act No. 14 of 1917 Ex.Sess., as amended by Act 172 of 1938 (covering an ad valorem tax) exempt from taxation the part of the value of shares of stock in banking corporations based upon the surplus, undivided profits and contingent reserves of such banking institution, up to the par value of the common capital thereof?

"The defendants contend that the provisions of the statute purely and simply grant an exemption from taxes in favor of banks and point out that, according to the record, the exemptions granted in favor of the respective banks, in the instant case, are as follows: Whitney National Bank, $2,-800,000, National Bank of Commerce,

$780,200, Hibernia National Bank, $622,-707. * * *

"The Legislature having expressly stated that the surplus, undivided profits, and contingent reserves, up to 100% of the par capital of the bank were not subject to the tax, necessarily placed these amounts of the surplus, undivided profits, and contingent reserves, in the category of exemptions to that extent. From the foregoing authorities, it is obvious that whether an exemption be called a deduction or an allowance is of no moment, for if it is, in fact, an exemption, or is equivalent to an exemption, then the act granting the same violates the constitutional provision against exemptions not enumerated therein.

"To maintain that an exemption resulting from a formula or a mode for the assessment valuation or the computation of the tax is not an exemption, would be, in effect, holding that the exemption clause of the Constitution above referred to places no limitation upon the power and authority of the Legislature to exempt property from taxation. In short, if this method of legislative procedure were sanctioned by the courts, the constitutional prohibition against exemptions would be in practical operation eliminated from the Constitution. This result we cannot countenance, because it would be contrary to both the letter and the spirit of the constitutional provision in question. As we see this case, it is not a situation where there is difference or variation in effect upon the taxpayers in the administration of the statute, due to a classification of the subject sought to be taxed,

but an exemption of taxable property from taxes by the very terms of the act.
    * * *

"It is our opinion that Act 172 of 1938 is unconstitutional, null and void, being violative of Section 4 of Article 10 of the Constitution of 1921, as amended, in that it grants an unauthorized exemption."

Section 4 of Article 10 of the Constitution of Louisiana of 1921 not only prohibits the Legislature from granting an exemption of property from taxation, but the assessors as well as the Tax Commission or any other officers in the Executive Department of the State are also thereby prohibited from granting or effecting an exemption unconstitutionally directed by the Legislature. The tax assessors of this State are required by Section 20 of Act 170 of 1898 to estimate the value of any taxable property "at its actual cash value." Section 4 of Act 14 of 1917, Ex.Sess., as re-enacted by Act 6 of 1934, definitely fixed the basis for arriving at the value of shares of stock in any bank as "the value of said stock as shown by the statements of said bank * * * made to the Comptroller of the Currency." While the value of the shares of stock, which is the book value thereof, as shown by the bank's statement, remains fixed, the law authorizes deductions from the assessment in order to avoid double taxation. First National Bank et al. v. Louisiana Tax Commission et al., 175 La. 119, 126, 143 So. 23.

The assessor, in making the original assessment herein, showed the value of the

shares of stock of the defendant bank to be $2,075,490.56. In addition to making the proper statutory deductions so as to avoid double taxation, the assessor, under the direction of the Tax Commission, allowed the exemption of $1,000,000, the par value of the original stock of the bank, unconstitutionally authorized by Act 172 of 1938. The assessor was merely acting as a ministerial officer in making the assessments of the shares of the bank stock. He accepted the statement of valuation given by the taxpayer and he granted the exemption of $1,000,000 under an unconstitutional statute. If the Legislature was powerless to grant or accomplish a tax exemption unauthorized by the Constitution by a mere formula or method of assessment, then neither the assessor nor the Tax Commission could do so where the only semblance of authority to grant or effect the exemption was derived from the Legislature.

In the case of the Methodist Episcopal Church South v. City of New Orleans et al., 107 La. 611, 32 So. 101, 102, the assessor had carried on the tax roll certain lots belonging to the Church as exempt from taxes, because they belonged to a religious corporation and its parsonage was located thereon. The assessor made a supplemental assessment roll for the year 1895, in accordance with the provisions of Section 12 of Act 170 of 1898 and sought to tax the property. The Church instituted suit to set aside the assessment. After concluding that the property was not being used for religious purposes, the court upheld the supplemental assessment, stating:

"* * * Property liable to taxation which is entered upon the assessment rolls

as 'exempt,' and which is not assessed, is 'omitted in the assessments' as effectually as if it were not entered at all, and is therefore within the meaning of the law providing for the assessment of property which has been omitted. As all property is liable to taxation unless it be shown to be within some exemption established by law, and as no such showing is made in this case, we must assume that the property in question was liable to taxation."

■ If it be said that the $1,000,000 exemption of the shares of stock was not an "omission" of property from the assessment under the statute, then surely it must be said the assessment was an improper or an erroneous one.

In the case of In re Blatt et al., 41 N. Mex. 269, 67 P.2d 293, 300, 110 A.L.R. 656, the Court said:

"A leading case enunciating the principle that 'erroneous assessment' or 'illegal assessment' does not mean 'excessive assessment' is the case of Clay County v. Brown Lumber Co., 90 Ark. 413, 119 S.W. 251, 252."

and quoted the following with approval from the Clay County case:

"'* * * The term "erroneous assessment," as there used, refers to an assessment that deviates from the law and is therefore invalid, and is a defect that is jurisdictional in its nature, and does not refer to the judgment of the assessing officers in fixing the amount of the valuation of the property. If the property paid on was exempt from taxation, or if the property was not located in the county, or if the

tax was invalid, or if there was any clear excess of power granted, so as to make the assessment beyond the jurisdiction of the assessing officer or board, * * *.' "

In the case of Stanley v. Board of Supervisors of the County of Albany, 121 U.S. 535, 7 S.Ct. 1234, 1239, 30 L.Ed. 1000, the Supreme Court of the United States had under consideration the question of the assessment of shares of stock of national banks. The Court pointed out that it was not a question of over-valuation nor a matter of re-assessment "where the assessment is wholly void, or void with respect to separable portions of the property," and stated:

"It [the method of assessment as to banks complained of] must sometimes lead also to overvaluation of the shares; but, if so, no ground is thereby furnished for the recovery of the taxes collected thereon. It is only where the assessment is wholly void, or void with respect to separable portions of the property, the amount collected on which is ascertainable, or where the assessment has been set aside as invalid, that an action at law will lie for the taxes paid, or for a portion thereof. * * *" (Brackets ours.)

Clearly, the original assessment in the instant case was void with respect to a "separable portion," that is, the $1,000,000 allowed as an exemption under the unconstitutional statute, and the supplemental assessment is no mere re-valuation or re-assessment of the same property but simply the placing on the supplemental assessment roll of property that was either omitted or improperly or erroneously assessed within

the meaning of the statute. It was certainly beyond the authority of the assessor and the Tax Commission to set aside this $1,-000,000, or property, as an exemption because the power they attempted to exercise was unconstitutionally granted by the Legislature.

The defendant's attorneys rely upon the cases of the Delta Land & Timber Co. v. Police Jury, 169 La. 537, 125 So. 585, and Whited v. Louisiana Tax Commission, 178 La. 877, 152 So. 552. In those cases, the Court was dealing with the question of re-assessment or re-valuation, purely and simply, of real property and not with a proposition involving an unconstitutional exemption. In the former case, the Court held that the timber on the land was a part of it and the assessment of the land carried with it the assessment of the timber, under Article 465, R.C.C., and Act 170 of 1898 and Act 188 of 1904. In the latter case, the Court likewise treated the improvements on the land as a part of it, because the assessor was authorized to take them into consideration in determining the value of the lots assessed. For those cases to be controlling here, it would be necessary to change the facts so as to show that after arriving at the value of the land in making his assessment, the assessor had also entered on the rolls a certain deduction from their value contrary to the provisions of the Constitution and that the Court had held in such a situation that Section 12 of the statute in question was inappropriate.

In the two cited cases, the assessor exercised discretion vested in him by law in arriving at the value of the property as-

sessed. The method of ascertaining that value was not rigidly prescribed as in the instant case. His duties were not clerical or ministerial but quasi-judicial for it required judgment on his part. It is a rule of necessity based on public policy not to allow the assessor to re-assess property where he has exercised discretion or judgment in ascertaining the value. To allow him to re-assess land or property asserting that he had failed to take into consideration the timber growing thereon, or to re-assess lots, alleging that he had not taken into consideration the improvements thereon, would open the door to uncertainty and to imposition on the part of the assessor or his successor.

In the instant case, the assessor acted purely ministerially or clerically in obeying the mandate of the Tax Commission under the unconstitutional statute and the fact that he omitted from the tax roll a $1,-000,000 of property subject to assessment or that he erroneously or improperly assessed it is unmistakable, and the property is separable and identifiable for assessment and taxation purposes.

Counsel for the defendants have relied upon some cases from other jurisdictions, asserting that they are analogous to the problem before us.

In the matter of In re Durant National Bank, 107 Okl. 65, 230 P. 712, the court was interpreting a statute permitting supplemental assessments of "omitted property" only. The statute did not contain the additional words "erroneously assessed" or "improperly assessed," as in the instant case.

In Peoples Savings Bank v. Layman, C. C., 134 F. 635, apparently there was no law of the State of Iowa requiring the assessor to accept the bank's statement as to the par value of its shares of stock as set forth in the statute of this state. The assessor was free to determine all of the considerations entering into the value of the shares of stock assessed. In that case, the assessor acted quasi-judicially. Here, he acted merely ministerially or clerically.

In the case of Ritchie Grocer Co. v. City of Texarkana, 182 Ark. 137, 30 S.W.2d 213, involving the valuation of notes, credits and accounts, the assessor was free to determine according to his conception of correctness their true value. There was no statute prescribing the ministerial course to follow in placing the value of the property on the assessment roll. In other words, he acted judicially and not clerically or ministerially as the assessor did in the instant case.

The defendant's attorneys argue that the provisions of Act 18 of the Second Extra Session of 1934 can be construed in no other manner and that this statute was obviously intended to settle for all times any question of valuation once the taxes extended on the tax rolls are paid. The pertinent parts of the statute cited read as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That Louisiana Tax Commission be and it is hereby authorized and empowered to change or correct any and all assessments of property for the purpose of taxation, in order to make said as-

sessments conform to the true and correct valuations.

"Section 2. That such change or correction may be made by Louisiana Tax Commission at any time before the taxes assessed have actually been paid.

\* \* \*

"Section 6. That it is the intention of this Act to authorize the Louisiana Tax Commission to change or correct any assessment of property for taxation, at any time before the taxes assessed have been paid, so as to assess the same at the correct valuation as determined by Louisiana Tax Commission, not to exceed its actual cash value, as defined by law."

█ This act expressly deals with the question of changing and correcting assessments so as to make them conform to the true and correct values, but, clearly, it does not deal with property omitted or property improperly or erroneously assessed, which is covered by Section 12 of Act 170 of 1898, as amended by Act 69 of 1908.

In order to show that there was not an "erroneous assessment" of the shares of stock within the terms and meaning of the statute, but that there had been merely an "erroneous basis" of valuation employed in arriving at the assessed value of the shares of stock in question, defendant refers us to the case of Opelousas-St. Landry Bank & Trust Company v. Thibodaux, Tax Collector, 169 La. 1194, 126 So. 919. In that case, the shares of stock of the state bank had been assessed for the year 1928, under Act 14 of 1917, Ex.Sess. The assessor failed to take into consideration the deduc-

tion allowed by Act 221 of 1928, which went into effect on August 1, 1928, or prior to the date the assessment was completed and the roll filed in the mortgage office on October 17, 1928. The book value of the 2,000 shares of bank stock less the real estate, which was allowed as a deduction to avoid double taxation, was $295,920. In its suit filed April 3, 1929, the bank claimed that it was entitled to deduct the capital stock which it owned of another corporation, whose entire capital was invested in real estate, and that the assessment therefor would have been $199,880. The court held that even though it be conceded the assessor used an erroneous basis of valuation of the shares of stock, after the passage of Act 221 of 1928, that the only thing assessed was the stock of the plaintiff bank and that the suit was simply for the purpose of reducing the assessment and as it was instituted thirty days after the assessment rolls were filed in the Mortgage Office, it came too late.

It will be noted that in that case the provisions of Section 12 of Act 170 of 1898, as amended by Act 69 of 1908, which authorize the assessor to place upon the assessment roll property which was omitted or erroneously assessed, were not before the Court and therefore were not considered or in any way referred to.

In the case of the Central Savings Bank & Trust Co. v. City of Monroe, 194 La. 743, 194 So. 767, 769, the bank failed for three years to timely claim deductions which it would have been entitled to in connection with the assessment of its shares of stock. In denying recovery to the taxpayer

who had paid the taxes for the years 1933 to 1937, inclusive, on the erroneous assessments which failed to take into consideration the deductions authorized by Section 4 of Act 14 of the Extra Session of 1917, as amended by Act 221 of 1928 and Act 6 of 1934, the Court stated:

"In the instant case, the property on which the taxes were erroneously paid was not exempt from taxation. It was subject to taxation less certain deductions which the taxpayer was permitted to claim in computing its taxable value. Section 4, Act 14 of 1917, as amended. The most that can be said of the assessment on which the taxes, erroneously paid, were predicated is that it was excessive, because of the failure of the bank to claim the deduction to which it was entitled under the law. A taxpayer is presumed to know the law and he has the right to investigate the legality of the taxes he is called upon to pay. The presumption of knowledge of law on the part of the plaintiff bank was strengthened by the notice appearing on the report filed by the bank with the Louisiana Tax Commission, calling attention to the provisions of section 4 of Act 14 of the Extra Session of 1917, with its amendments, and advising the bank to file its report in accordance with the provisions of the statute. If the bank failed to investigate the law in order to ascertain its rights, the fault was that of the bank and not of the taxing authorities. Based on the silence of the bank and its acquiescence in the legality of the taxes, the municipal authorities prepared the municipality's budget and disbursed its funds for public purposes. Under the general law, the property of the bank was liable to taxation; hence, the bank was under a natural obligation to contribute its proportionate share to the support of the municipal government from which it derived its benefits."

Again, we point out that that case did not involve the construction of Section 12 of Act 170 of 1898, as amended by Act 69 of 1908.

It is quite possible under our law for a taxpayer to be compelled to pay more taxes than the law requires of him, if he fails to timely contest an erroneous or incorrect assessment which does not grant him deductions sanctioned by the law.

It is said that it is unjust and unfair to the taxpayer to be compelled to pay more taxes than he should pay under the law simply because he failed to ask for a correction of the assessment within the statutory period of time; and that it is unjust and unfair to the taxpayer who has paid more taxes than he should have, because he did not claim the deductions allowed him by law, to deny him recovery of the overpayment. While on the other hand, if the assessor erroneously allows the taxpayer an exemption, which he is not entitled to under the law, and the taxpayer pays on the basis of that assessment the amount of the taxes claimed by the State and it subdivisions, their officials have the right to supplement the assessment roll so as to cover any property omitted or erroneously assessed.

This is a matter that might eminently deserve the immediate attention of the

Legislature, but the difference between the situation of the taxpayer and the taxing authorities is that the Legislature under Section 12 of Act 170 of 1898, as amended by Act 69 of 1908, has granted the taxing authorities the right to supplement the tax rolls so as to cover the property omitted therefrom or erroneously or improperly assessed thereon, provided they do not go back over a greater period of time than three years.

■ By Act of Congress, U.S.Rev. Stat. § 5219, 12 U.S.C.A. § 548, the several states are permitted to tax the shares of stock of national banking associations, but conformably to the permission granted by Congress, the assessment of such property for ad valorem tax purposes must be to the shareholders and no other form of assessment is valid or enforceable. First National Bank of Gulfport, Miss. v. Adams, Revenue Agent, etc., 258 U.S. 362, 42 S.Ct. 323, 66 L.Ed. 661.

■ Under the statutes of this State taxing shares of stock of banks, while the tax is placed on the shareholders, the bank is the agency or instrumentality through which the tax is collected and its obligation or duty is to pay the taxes out of the funds or property of the shareholders in its possession. Act 170 of 1898, Act 14 of 1917, Ex.Sess. as amended by Act 6 of 1934, and In re Feliciana Bank & Trust Company, 143 La. 46, 78 So. 169.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is annulled and set aside, and

It is now ordered, adjudged and decreed that there be judgment herein in favor of J. Howell Flournoy, sheriff and ex-officio tax collector of Caddo Parish, and against the defendant, the First National Bank of Shreveport, ordering and commanding the defendant, as the agency or instrumentality of the shareholders of stock of the said bank, to deliver to the plaintiff, within ten (10) days from the date that the judgment of this Court becomes final, all shares of stock of the shareholders of the First National Bank of Shreveport, or so much thereof as may be necessary to realize therefrom, at judicial sale, the sum of fourteen thousand four hundred fifty-five and 29/100 ($14,455.29) dollars, the amount of the ad valorem taxes for the year 1939 on the shares of stock of the said bank against the shareholders thereof, with 10% per annum interest thereon from October 1, 1940, until paid, and an additional 10% thereon, as attorneys' fees; and all costs of court; and in default of compliance with the foregoing part of this decree, it is ordered that there be judgment in favor of the plaintiff, J. Howell Flournoy, sheriff and ex-officio tax collector of Caddo Parish, and against the defendant, the First National Bank of Shreveport, ordering and commanding it, within ten (10) days from the date of the default, to deliver to the plaintiff sufficient movable property belonging to itself to satisfy the judgment of fourteen thousand four hundred fifty-five and 29/100 ($14,455.29) dollars for taxes, with 10% per annum interest thereon from October 1, 1940, until paid, together with 10% attorneys' fees thereon, by selling the movable property

at judicial sale; and, in default of compliance with the foregoing parts of this decree, it is ordered that there be judgment in favor of the plaintiff, J. Howell Flournoy, sheriff and ex-officio tax collector of Caddo Parish, and against the defendant, the First National Bank of Shreveport, in the sum of fourteen thousand four hundred fifty-five and 29/100 ($14,455.29) dollars, with 10% per annum interest thereon from October 1, 1940 until paid and an additional 10% thereon as attorneys' fees; and all costs of this suit;

It is further ordered, adjudged and decreed that there be judgment herein in favor of J. Thos. Tanner, tax collector, City of Shreveport, and against the defendant, the First National Bank of Shreveport, ordering and commanding the defendant, as the agency or instrumentality of the shareholders of stock of the said bank, to deliver to the plaintiff within ten (10) days from the date that the judgment of this Court becomes final, all shares of stock of the shareholders of the First National Bank of Shreveport, or so much thereof as may be necessary to realize therefrom at judicial sale the sum of fourteen thousand three hundred fifty-seven and 95/100 ($14,357.95) dollars, the amount of the ad valorem taxes for the year 1939 on the shares of stock of the said bank against the shareholders thereof, with 10% per annum interest thereon from October 1, 1940 until paid, and an additional 10% thereon, as attorneys' fees; and all costs of court; and, in default of compliance with the foregoing part of this decree, it is ordered that there be judgment in favor of the plaintiff, J. Thos. Tanner, tax collector, City of Shreveport, and against the defendant, the First National Bank of Shreveport, ordering and commanding it, within ten (10) days from the date of the default, to deliver to the plaintiff sufficient movable property belonging to itself to satisfy the judgment of fourteen thousand three hundred fifty-seven and 95/100 ($14,357.95) dollars for taxes, with 10% per annum interest thereon from October 1, 1940 until paid, together with 10% attorneys' fees thereon, by selling the movable property at judicial sale; and, in default of compliance with the foregoing parts of this decree, it is ordered that there be judgment in favor of the plaintiff, J. Thos. Tanner, tax collector, City of Shreveport, and against the defendant, the First National Bank of Shreveport, in the sum of fourteen thousand three hundred fifty-seven and 95/100 ($14,357.95) dollars, with 10% per annum, interest thereon from October 1, 1940, until paid and an additional 10% thereon as attorneys' fees; and all costs of this suit.

O'NIELL, C. J., and ODOM, J., dissent.