On Rehearing.
 

 HIGGINS, Justice.
 

 The District Attorney of the Twenty-first Judicial District instituted proceedings against the Attorney-General of the State of Louisiana, to enjoin and restrain him from allegedly attempting to illegally supersede, supplant and relieve him as the District Attorney for the Parish of Tangipahoa, without any cause whatever, in three criminal cases where Jerome A. Hayes and others were indicted by the Grand Jury, and as the legal advisor of the Grand Jury of the Parish of Tangipahoa with reference to any investigations or complaints regarding any and all public institutions and offices in the Parish, and particularly all audits of and concerning the following: .the office of the Sheriff,- the Clerk of Court, Police Jury, School Board, the office of the Assessor, Southeastern Louisiana College, Southeastern Experiment Station, Florida Parishes Hospital, Louisiana Milk Commission, Camp Moore Cemetery, Louisiana Conservation Station,
 
 *125
 
 and Louisiana Highway Commission, insofar as the Parish of Tangipahoa was concerned, over'the protests and objections of the District Attorney and the Grand Jury.
 

 The petitioner alleges that the actions of the Attorney-General in attempting to supersede him were unconstitutional, illegal and arbitrary, and beyond the powers conferred upon him by Section 56 of Article VII of the Constitution of this State, the Attorney-General predicating his right to take such action upon the provisions of Act No. 24 of the First Extra Session of the Legislature of 1934, which statute is alleged to be unconstitutional, being violative of
 

 Section 56 of Article VII of the Constitution of the State of Louisiana,' which limits the powers of the Attorney-General over district attorneys;
 

 Section 58 et seq. of Article VII of the Constitution, which creates the office of District Attorney for each judicial district;
 

 Section 6 of Article IX of the Constitution providing the exclusive method of removing a District Attorney from office;
 

 Section 6 of Article I and Section 1 of Article VII of the Constitution, which provide that all courts shall have judicial powers and shall be open to every person for injury done him in his rights and that such person shall have adequate remedy by due process of law without denial thereof;
 

 ■ Section 2 of Article I of the Constitution and the XIV Amendment of the Constitution of the United States, which guarantee petitioner due process of law; .
 

 Section 6 of Article I of the State Constitution and Section 1 of the Federal Constitution the XIV Amendment" thereof, guaranteeing the petitioner the equal protection of the law; and
 

 Section Í6 of Article III of the Constitution because the Act embraces more than one object, without the title of the act indicating all of them.
 

 The plaintiff, in the alternative, pleaded that in the event the Court should hold Act No. 24 of the First Extra Session of 1934 constitutional, the Attorney-General could only relieve, supplant and supersede him under the act for the protection of the rights and interests of the State, and that the Attorney-General has attempted to supersede him without assigning any reason or cause whatsoever in an arbitrary and illegal way, although the petitioner was ready, willing and able to faithfully - and promptly carry out the duties of his office.
 

 The Attorney-General filed exceptions to the jurisdiction of the court ratione materiae and of no right and of no cause of action on the ground that the statute in question grants him the sole discretion to supersede, relieve and supplant a District Attorney and that his actions in that respect are not subject to review by the court under the express provisions thereof. With reservation of his exceptions, he answered, and denied the allegations of the petition charging that he acte'd illegally and abused his discretion.
 

 The trial judge overruled the exceptions, and, on th.e merits, decided that the evidence overwhelmingly showed that the Attorney-General had manifestly and palpa
 
 *127
 
 bly abused his discretion, and granted a permanent injunction restraining the Attorney-General from superseding, supplanting and relieving the District Attorney in .all of the criminal proceedings in question and as advisor of the Grand Jury. He refused to grant the defendant a suspensive .appeal and upon application to this Court, an appeal was granted under the authority of Act No. 29 of 1924 and Act No. 15 of the Second Extra Session of 1934. In our original majority opinion we held that the provision in Act No. 24 of the First Extra Session of the Legislature of 1934 denying the courts the right to inquire into or question the exercise of the discretion granted the Attorney-General to supersede a District Attorney in a criminal proceeding was unconstitutional and that the Att'orney-General had abused his discretion. The judgment of the district court was affirmed. Two of the justices were of the opinion that the entire part of the statute under attack was unconstitutional. One justice dissented. A rehearing was granted on the Attorney-General’s application and the case was reargued and submitted with additional briefs.
 

 Section 56 of Article VII of the Constitution of the State of Louisiana of 1921, provides: '
 

 “The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment.
 
 They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in
 
 any and all suits or
 
 other proceedings,
 
 civil or
 
 criminal,
 
 as they
 
 may deem necessary for the assertion or protection of the rights and interests of
 
 the
 
 State.
 
 They shall exercise
 
 supervision
 
 over the several
 
 district attorneys throughout the State,
 
 and perform all other duties imposed by law.” (Emphasis ours.)
 

 Article 23 of the Code of Criminal Procedure, adopted by the Legislature of 1928, provides:
 

 “The Attorney General and his assistants shall have power and authority to institute and prosecute, or to intervene in any proceeding, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the state; and furthermore, the Attorney General shall exercise supervision over all of the District Attorneys throughout the state and shall represent the state in criminal cases on appeal.”
 

 Act No. 24 of the First Extra Session of the Legislature of 1934, reads:
 

 “To amend and re-enact Articles 17 and 156 of the Code of Criminal Procedure.
 

 “Section 1. Be it enacted by the Legislature of Louisiana That Article 17 and 156 of the Code of Criminal Procedure Be and the same are hereby amended and reenacted so as to read as follows:
 

 “ ‘Art. 17. Subject to the supervision of the Attorney General, as hereinafter provided, the District Attorney shall have entire charge .and control of every criminal prosecution instituted or pending in any
 
 *129
 
 parish wherein he is district attorney, and shall determine whom, when, and how he shall prosecute; provided, that every district attorney shall have the right to employ or to accept the assistance in the conduct of any criminal case of such counsel as to him may seem fit.
 
 Provided, further, that the Attorney General shall have power to relieve, supplant and supersede the District Attorney in any criminal proceeding, when he may deem it necessary for the protection of the rights and interests of the State, with full power to institute and prosecute criminal proceedings, and the discretion of the Attorney General under this Article shall not be questioned or inquired into by any court.’
 
 (Italics ours.)
 

 “ ‘Art. 156. Whenever the Attorney-General or any district attorney shall be informed that a crime or misdemeanor has been committed, and that no complaint or declaration has been made before any judge or justice of the peace, it shall be their duty respectively to inquire ex officio into the fact by causing all persons they shall suppose to have some knowledge of the fact to be summoned before some judge or justice of the peace, that their depositions may be taken;
 
 provided, that the Attorney General shall have the power to intervene and to relieve, supplant and supersede the District Attorney in any such proceeding instituted by such district attorney, when the Attorney General may deem it necessary for the protection of the rights and interests of the State, and the discretion of the Attorney General under this Article shall not be questioned or inquired into by any court.’
 
 (Italics ours.)
 

 “Section 2. That all laws or parts of law in conflict herewith are hereby repealed.”
 

 It will be observed that the Legislature, in 1928, in adopting Article 23, as a part of the Code of Criminal Procedure, did not attempt to extend the powers of the Attorney-General beyond those granted in Section 56 of Article VII of the Constitution. On the other hand when the Legislature, in 1934, adopted Act No. 24 of the First Extra Session, it enlarged the powers of the Attorney-General over District Attorneys by giving him the right to “relieve, supplant and supersede” the District Attorneys in any criminal proceeding in which he deemed it necessary for the protection of the rights and interests of the State, and, in conferring that power and discretion upon him, expressly forbid the courts from questioning or inquiring into his action. It will be noted that Section 56 of Article VII of the Constitution does not confer on the Attorney-General an unreviewable discretion. No where in that section are the words
 
 “relieve”,
 
 “supplant” and
 
 “supresede”
 
 used. The words
 
 “intervene”
 
 and
 
 “supervision”
 
 are found there. These words are defined in Webster’s International Dictionary, Second Edition, as follows:
 

 “Intervene
 
 — to come in or between * * *; to interpose.”
 

 “Interpose
 
 — to intrude; to step in between parties at variance; to mediate; to intervene.”
 

 “Supervise
 
 — to oversee for direction; to superintend; to inspect with authority; * * * also, to exercise supervision over;
 
 *131
 
 as to supervise a * * * department; * * *
 
 »»
 

 “Supervision
 
 — Act of occupation of supervising; inspection; * *
 

 “Relieve
 
 — to release from a post, station, or duty; to put another in place of, or to take the place of, * * * in the bearing of any burden, or discharge of any duty.”
 

 “Supplant
 
 — To overthrow, destroy, undermine, or force away, esp. in order to put'a substitute in place of.”
 

 “Supersede
 
 — to replace; to displace, or set aside and put another in place of; to supplant, as to supersede one official with another.”
 

 The office of District Attorney is created and governed by the provisions of Sections 58, 59, 60, 61, 62, 63 and 64 of Article VII of the Constitution, but while these sections do not detail the duties and powers of the office, it clearly appears that he is to act as the State’s prosecuting attorney in his district, and Section 6 of Article IX of the Constitution expressly provides that the District Attorney, as a district officer, can be removed from office only for certain specified causes in a suit before a court of competent jurisdiction.
 

 By virtue of the constitutional amendment — Act No. 262 of 1926 — adopted ip the election of November 2, 1926, the Legislature, in 1928, adopted the Code of Criminal Procedure drafted by three former district attorneys and it contains provisions relative to the powers and the duties of the Attorney-General and the District Attorney in criminal proceedings.
 

 Article 17 of the Code provides that the District Attorney shall have entire charge and control of every criminal prosecution instituted or pending in any Parish in his district and shall determine whom, when, and how he shall prosecute, subject to the supervision of the Attorney-General.
 

 Article 18 of the Code makes the District Attorney “the representative of the public and the legal adviser of the grand jury”.
 

 Articles 19 and 215 grant the District Attorney the right at all times, except during its deliberations to appear before the Grand Jury as its legal advisor.
 

 Article 25 provides that the Attorney-General “shall consult with and advise the District Attorneys in all matters appertaining to the duties of their office.”
 

 Articles 327, 328, 329, 330 and 331 confer upon the District Attorney the authority to enter a nolle prosequi and place certain restrictions thereon.
 

 In adopting Article 23 of the Code, the Legislature recognized the limitation on its authority by practically tracking Section 56 of Article VII of the Constitution, but in passing Act No. 24 of the First Extra Session of 1934, the Legislature ignored the limitation and went much further in granting the Attorney-General additional powers. Therefore, the Statute of 1934 clearly gives to the Attorney-General greater and more extensive powers than those granted to him by Section 56 of Article VII of the Constitution, above quoted.
 

 The Attorney-General recognized the difference in the meaning of the words “intervene” and “supersede”. He testified,
 
 *133
 
 in this case, that he only “intervened” with the District Attorney (James Burns) in St. Tammany Parish, Louisiana, but “superseded” the plaintiff as District Attorney in the instant case.. In the former instance, the Attorney-General and the District Attorney acted together in the case, but in the latter the District Attorney was completely excluded from taking any part whatsoever in the matters. There is an obvious difference in a case where the District Attorney is acting under the supervision of the Attorney-General when lie has intervened, or is supervising, and one where the Attorney-General has superseded and supplanted the District Attorney and put him out of the proceedings entirely. If the District' Attorney has the constitutional right to remain in the criminal proceeding under the supervision of the intervening Attorney-General, then it is clear that he cannot be legally eliminated entirely therefrom. In the instant suit, the Attorney-General is not claiming that he intervened and is supervising under Section 56 of Article VII of the Constitution, but the record shows that he has attempted to supersede and supplant the District Attorney under the Act of 1934.
 

 Analyzing the first paragraph of Section 56 of Article VII of the Constitution, it will be noted that it consists of three sentences. The first sentence does not pertain to nor have any bearing on the issues before us. The second one places the Attorney-General and his assistants in charge of all legal matters where the State is a party or in which the State has an interest, and requires them to attend thereto, and grants them the power and authority to institute and prosecute, or to intervene in civil suits or criminal proceedings whenever they deem it necessary for the assertion or protection of the rights and interests of the State. The third sentence gives the Attorney-General and his assistants the right to exercise supervision over the district attorneys throughout the State. If the first part of the second sentence which places the Attorney-General in charge of all legal matters in which the State has an interest means that he has the power and authority to completely exclude and eliminate district attorneys from participating in such matters by superseding, relieving and supplanting them, the latter part of the same sentence, which more specifically defines the power and authority of the Attorney-General to institute, prosecute and intervene in any civil suit or criminal proceeding and to assert the rights and protect the interests of the State, is wholly unnecessary. If this language means that the Attorney-General has full and absolute charge of all legal matters in which the State has an interest to the complete exclusion and elimination of any District Attorney, that would be plenary power for all purposes and the balance of the sentence would be meaningless and a needless waste of words. Furthermore, the third sentence would be purposeless because it simply provides that the Attorney-General and his assistants shall have supervision of the several District Attorneys throughout the State. If the Attorney-General and his assistants, under the first part of the second sentence, have complete and absolute charge, to the complete ex-
 
 *135
 
 elusion of District Attorneys, of all legal matters in which the State has an interest, why should the members of the Constitutional Convention have then provided for the mere supervision of the District Attorneys by the Attorney-General? The latter part of the second sentence and the third sentence of Section 56 show that the members of the Constitutional Convention did not intend to grant the Attorney-General and his assistants the complete and exclusive charge and control of all legal matters in which the State has an interest. If they intended that such exclusive, unlimited, and extensive power and authority should be conferred upon the Attorney-General and his assistants, they certainly would have used appropriate language to convey that meaning. We are borne out in this interpretation by the contemporaneous construction placed by the Attorney-Generals of this State since 1921, upon these provisions of the Constitution, because it was only after the Legislature passed Act No. 24 of the First Extra Session of 1934, that the Attorney-General and his assistants claimed the right, authority, and power to supplant, supersede and relieve the District Attorney in criminal proceedings. The first case on the subject is State v. Major, 181 La. 822, 160 So. 425, decided by this Court on March 4, 1935.
 

 In supervising the District Attorneys or taking charge of legal matters by attending thereto or by instituting and prosecuting any criminal proceeding or intervening therein, under Section 56 of Article VII, the Attorney-Generals and their assistants did not claim the right and authority to exclude the District Attorney completely and absolutely from any participation therein as they have done under their constructions of Act No. 24 of the First Extra Session of 1934. In the instant case, it appears that the Attorney-General and his assistants did not institute or prosecute any criminal proceeding or intervene therein, but claimed the right to supplant, supersede and relieve the District Attorney in toto of all participation in such criminal proceedings and as ad-visor of the Grand Jury.
 

 Section 56 of Article VII is found in that part of the Article of the Constitution that establishes the Department of Justice.
 

 Sections 58, 59, 60, 61, 62, 63 and 64 of the same Article (VII) create the office of District Attorney throughout the State in each judicial district, provide for his qualifications, election, term of office, salary and the appointment of an assistant district attorney and his removal. While the Constitution does not enumerate the powers and duties of a District Attorney, his right and authority thereunder to institute and prosecute criminal proceedings against persons charged with crime, if not expressly provided for, is clearly and necessarily implied from the above sections of the Constitution and especially Section 63 of Article VII, which reads as follows:
 

 “§ 63. It shall be gross misconduct, and a cause for removal from office, for any district attorney or assistant district attorney to appear, plead, or in any way defend, or assist in defending, any criminal prose
 
 *137
 
 cution, or charge, involving a penalty or punishment for the violation of any law, or ordinance, in the State.”
 

 The reason why it is gross misconduct and a cause for removal from office for a district attorney or his assistant to defend or assist in defending a person who has committed a crime is because it is their duty to represent the State in prosecuting him. Briefly, they are made prosecuting attorneys by the provisions of the Constitution.
 

 If the members of the Constitutional Convention did not intend the District Attorneys to be prosecuting attorneys subject to the supervision of the Attorney-General, we are at a loss to know why they expressly prohibited them from taking any part whatsoever in defending those charged with violating any law or ordinance involving a penalty or punishment therefor. Furthermore, Section 6 of Article IX of the Constitution expressly provides the exclusive method of divesting a District Attorney of his office or removing him therefrom.
 

 If this Court were to hold that Section 56 of Article VII of the Constitution does not limit the powers of the Attorney-General over District Attorneys and the Legislature could confer exclusively upon the Attorney-General, as additional or other duties, all of the duties and functions heretofore performed and powers exercised by District Attorneys, a most unusual and extraordinary result could follow. The Legislature under such a ruling would have the constitutional right and authority by statute to grant to the Attorney-General and his assistants complete, absolute, and exclusive control of all of the duties and functions now performed and powers exercised by District Attorneys and their assistants in both civil and criminal matters in which the State has an interest. Thus we would have the spectacle of the District Attorneys throughout the State having titles to constitutional offices for a constitutionally fixed term of six years with salaries, without any powers, duties, functions and responsibilities, because the Legislature is powerless either to remove them from office or to abolish their office by statute. Certainly the members of the Constitutional Convention did not intend to leave the Legislature with such unrestricted power to bring about such an absurd result. It is only by isolating the provisions of Section 56 of Article VII and ignoring Sections 58 through 64, inclusive, under the same article, and the provisions of Section
 
 6
 
 of Article IX of the Constitution, that one could possibly interpret the language of Section 56 - to mean that the members of the Constitutional Convention did not intend, in that Section, to place a limitation or restriction upon the powers of the Attorney-General over District Attorneys and the right of the Legislature to confer other duties upon the Attorney-General by taking away the powers of the District Attorneys.
 

 In 59 C.J. 112, § 124, the rule is stated thus:
 

 “In the absence of constitutional restrictions, the duties of a state officer may be increased or diminished at the will of the legislature. But the legislature cannot de
 
 *139
 
 prive an officer of the duties imposed upon him by the constitution, as by transferring his duties to another officer.”
 

 In Cobb v. Parnell, Governor, 183, Ark. 429, 36 S.W.2d 388, 389, the Supreme Court of Arkansas stated the rule of construction thus:
 

 “It is a fundamental and universally recognized canon of construction that the Constitution of this state is not a grant, but a limitation, of power, and, in all cases where there is not-an express or necessarily implied limitation of its power by the Constitution, the Legislature is supreme; and it is always the presumption that, in the enactment of a law, the power of the Legislature has not been limited and it is properly exercising its inherent authority.”
 

 It is our opinion that Section 56 of Article VII of the Constitution limits the powers of the Attorney-General and his assistants over the District Attorneys and their assistants and that the Legislature cannot, by statute, in conferring upon the Attorney-General other duties, deprive the District Attorneys and their assistants of the powers of their office, contrary to the restrictions or limitations upon the Attorney-General’s powers -placed in Section 56 of Article VII of the Constitution. As the proviso part of Act No. 24 of the First Extra Session of 1934 amending Article 17 of the Code of Criminal Procedure violates those limitations by conferring powers in excess of those allowed, it is unconstitutional, null and void.
 

 Ordinarily, the above conclusion would make it unnecessary for us to consider the other constitutional issues raised herein, but based upon an error made by us in inadvertently adding the words “relieve”, “supersede” and “supplant” to Section 56 of Article VII of the Constitution, as will be explained hereafter, we have heretofore expressed views contrary to our present ones, and now deem it necessary to consider other constitutional points presented herein, in order to clarify the law on this important subject.
 

 Section 6 of Article IX of the Constitution of this State of 1921 provides the exclusive method of removing a District Attorney from office through court proceedings and- for the causes specified in Section 1 of the same Article. The jurisprudence of this State is clear that the provisions of the Constitution o'f this State providing for the method of removal of officials from office are exclusive. In re J. Claude Meraux, 202 La. 736, 12 So.2d 798; State v. Gravolet, 168 La. 648, 123 So. 111; State v. Dunson, 138 La. 131, 70 So. 61; State v. Bain, 137 La. 308, 68 So. 621, State v. Judges, 35 La.Ann. 1075; State v. Lamantia, 33 La.Ann. 446; and State v. Carey, 28 La.Ann. 49. The Attorney-General contends that Section 6 of Article IX of the Constitution is inapplicable in this case because he has not attempted to remove the District Attorney from office but only to supersede, supplant and relieve him in the criminal matters specified in his two letters addressed to the District Attorney on September 15 and 23, 1941, notifying him thereof.
 

 • The issue in this case is not whether the Attorney-General has exercised a sufficient
 
 *141
 
 amount of the power granted to him by the statute in question to remove the District Attorney from his office, but whether or not the provisions of the Act in question grant him the unreviewable discretion or power to divest the District Attorney of his office for all practical purposes. If the statute were held to be constitutional, it is obvious that the Attorney-General would have the right and authority thereunder, without cause, to relieve, supplant and supersede the District Attorney in all criminal proceedings by simply notifying him of his decision. As practically all of the District Attorney’s duties and functions pertain to criminal proceedings, if the Attorney-General superseded him in all such matters, he would be the District Attorney in name only, except that he would remain as the legal advisor to the Police Jury and the School Board in civil mattters and be entitled to draw his salary. The statute does not place any limit upon the number of criminal proceedings in which the At-. torney-General shall have the right to supplant the District Attorney nor does it limit the period of time that the supplanting of the District Attorney shall remain in effect. Consequently, under the statute, the Attorney-General has the discretion and power expressly granted to him to supersede the District Attorney in all criminal proceedings for an indefinite length of time without any hearing before the Attorney-General and without any cause whatsoever, and the courts are forbidden to question or inquire into his action. Under this statute, if the Attorney-General decided to do so, by relieving, supplanting and superseding the District Attorneys throughout the State in all criminal proceedings, he would have the entire machinery for the administration of justice in his hands, because he would be the legal advisor of the Grand Juries and could institute criminal prosecutions and nolle prosequi them at will, and his discretion therein could not be questioned either by the District Attorneys or by the courts. Certainly, Section 56- of Article VII of the Constituí tion does not confer upon the Attorney-General such plenary and unreviewable power and discretion and does not leave the Legislature free to grant him such power and discretion-. In the argument before the Bar, the Attorney-General conceded that if he had gone so far as to relieve and supersede the District Attorney in all criminal proceedings, his actions would have been illegal, but he stated that he had not done so.
 

 We reiterate that the answer to the Attorney-General’s position in the above respect is that, the question is not whether' he has exercised the full authority granted to him by the Act in controversy, but whether or not that Act grants him the unreviewable discretion and power to relieve the District Attorney of all of the duties and functions of his office in criminal1 proceedings. Clearly, the Act by its express terms grants the Attorney-General such plenary power and discretion and as a result thereof manifestly clashes with the purpose and spirit, if not the letter, of the constitutional inhibition that the District Attorney cannot be divested of his office or removed therefrom except for cause and in any other manner than the exclu
 
 *143
 
 sive method provided in Section 6 of Article IX of the Constitution. An Act of the Legislature that grants to the Attorney-General the power to divest a District Attorney of all powers, authority and functions of his office, leaving him with nothing except the naked title thereto and salary, is irreconcilable with Section 6 of Article IX of the Constitution, because the District Attorney would be virtually and practically removed from office, in the true sense, although not in the technical legal sense.
 

 Section 6 of Article I of the Bill .of Rights of the Constitution provides:
 

 ’• '“All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process o”f law and justice administered without denial, partiality or unreasonable delay,”
 

 Section 1 of Article VII reads, as follows :
 

 “The judicial power shall be vested in the Supreme Court, in Courts of Appeal, and in District Courts, and in such other courts as are hereinafter provided.”
 

 The Statute expressly forbids the court to question or inquire into the Attorney-General’s discretionary action in the exercise of the power to relieve, supplant and supersede the District Attorney whenever he deems it necessary for the protection of the rights and interests of the State. Therefore, if the Act were held to be constitutional, the District Attorney would be unquestionably denied his constitutional right to have the Court review the action of the Attorney General in relieving, supplanting and superseding him, and thus judicial power would be conferred upon the Attorney-General.
 

 We may say here that Section 56 of Article VII of the Constitution does not confer upon the Attorney-General an unreviewable discretion in exercising the powers granted to him thereby because it is not declared therein that the courts shall not have the right to inquire into such actions by him. The hold otherwise would make the above Section conflict with Section 1 of the same Article granting judicial power to the courts and Section 6 of Article 1 thereof guaranteeing that the courts shall be open for the assertion of rights through adequate remedy to all persons.
 

 In Meyer v. Board of Trustees, etc., 199 La. 633, 6 So.2d 713, 716, a widow sued for a pension alleged to be due her under Section 12 of Act No. 43 of 1902, amended by Act No. 27 of 1914. The defense was that the Board of Trustees’ decision on the plaintiff’s application for the pension was final and conclusive under the provisions of Section 3 of the statute as amended, because it was expressly provided that a decision of the Board “shall be final and conclusive, and [not] subject to review or reversal except by the Board.” In affirming the judgment of the district court, after quoting the provisions of Section 6 of Article 1 of the Constitution (Bill of Rights), the Court said:
 

 “Article VII of the Constitution of Louisiana of 1921 vests in the Supreme Court, the Courts of Appeal and the district courts judicial power. Section 80 and 81, respec
 
 *145
 
 tively, of the same Article, create the
 
 Civil
 
 District Court for the Parish of Orleans and vest it with original civil jurisdiction. Therefore, the pertinent provision in Section 3 of the above statute cannot be interpreted as the defendant demands that it should be, without resulting in its nullity or unconstitutionality.”
 

 Therefore, that part of the statute which states that “the discretion of the Attorney General under this Article shall not be questioned or inquired into by any court” is clearly and manifestly unconstitutional.
 

 Having concluded that the above portion of Act No. 24 of the First Extra Session of 1934 is unconstitutional and assuming that the remainder of the proviso of the statute is constitutional (contrary to our opinion hereinabove expressed), the next question is whether or not that part of the Statute which grants the discretionary power to the Attorney-General to relieve, supplant and supersede the District Attorney in any criminal proceeding that he may deem necessary for the protection of the rights and interests of the State is so closely bound to the unconstitutional part of the Statute as to likewise strike it with nullity.
 

 In the case of Flournoy v. First National Bank of Shreveport, 197 La. 1067, 3 So.2d 244, there was presented the question of whether or not the provisions of Act No. 172 of 1938, in assessing and taxing shares of stock of State and National Banks, were separable. The Court had previously, in the case of Hibernia National Bank et al. v. Louisiana Tax Commission et al., 195 La. 43, 196 So. 15, declared a part of the statute unconstitutional insofar as State Banks were concerned. In deciding that the statute was unconstitutional as to both State and National Banks, the Court said [197 La. 1067, 3 So.2d 247] :
 

 “In the case of the City of Alexandria v. Hall, 171 La. 595, 131 So. 722, 724, the Court said:
 

 “ ‘It is well settled that a statute may be valid in part and invalid in part, and that the invalid part may be disregarded altogether and the other part constitute a valid statute, if the two parts are not so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other.’
 

 “Act 172 of 1938 contains no severability clause. There is no mention therein whatsoever of shares of national bank stock. The Act does not make any distinction between shares of stock of state or national banks. It sets out no line of demarcation and in no wise indicates that the Legislature was considering separately the shares of stock of state banks or national banks. There is nothing contained in the statute which can be pointed to as raising the presumption that if the members of the Legislature had known that the features therein pertaining to state banks would thereafter be declared unconstitutional, it was their intention that the act stand as affecting national bank shares only.”
 

 It will be noted that the part of the Statute under attack begins with - the word “provided” and consists of one sentence. The main thought and meaning conveyed by the sentence is to give the Attorney-
 
 *147
 
 General absolute and unquestionable discretionary power to relieve, supplant and supersede the District Attorney in any criminal proceeding without cause or reason when he deems it necessary for the protection of the rights and interests of the State without being subject to judicial review. It will be observed that the Act does not contain any clause that, in the event any part thereof is held to be unconstitutional, the Legislature intended that the remainder of it be effective.
 

 Are both portions of
 
 the
 
 Statute in question — the part declared unconstitutional and the other part or remainder of the sentence — “so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other”? We think so. It would be pure conjecture and speculation on our part to say that the Legislature would have enacted the first part of the proviso without the latter part, because the
 
 Whole
 
 purpose of that portion of the Statute was to make the Attorney-General supreme and his actions final in supersession matters without the District Attorney having any right to complain to the courts, nor the courts the authority to inquire into or question his action even though he acted arbitrarily, capriciously and illegally. There is nothing in the provisions of the Statute to show that the Legislature was considering these parts of the Statute separately. The Act does not contain any language expressly or impliedly indicating in the slightest that, if the members of the Legislature had known that a part of the Act would be declared unconstitutional, they intended the other part thereof to stand. Under these circumstances, we could not with any confidence state that the provisions of the statute are separable. Therefore, it is our conclusion that the first part of the controversial sentence of the statute beginning with the word “provided” and ending with the word “court” is likewise unconstitutional.
 

 In support of his position the Attorney-General relies upon three cases: State v. Major, 181 La. 822, 160 So. 425; State v. Ardoin, 197 La. 877, 2 So.2d 633; State ex rel. De Armas v. Platt, Judge, 193 La. 928, 192 So. 659; and the unreported ruling of. this Court made in February, 1941, on the question of supersession of district attorneys by the Attorney-General in connection with two applications for writs under our supervisory jurisdiction, Nos. 36,-117 and 36,127 of the docket of this Court.
 

 The first case was decided by this Court in March, 1935, and arose as a result of the District Attorney for the Parish of Orleans (the present Attorney-General) insisting on prosecuting the defendant for carrying concealed weapons when he claimed the l-ight as an officer of the law to do so. The Attorney-General agreed with the defendant and disagreed with the District Attorney and wrote him a letter that he was superseding and relieving him as District Attorney in that particular case.' In the litigation that followed, the District Attorney pleaded that Act No. 24 of the First Extra Session of 1934, under which the Attorney-Gener.al was acting, was unconstitutional, because, under Section 56 of Article VII of the Constitution, the au
 
 *149
 
 thority of the Attorney-General to relieve and supersede the District Attorney “is thereby limited to cases where the intervention of the Attorney General * * * is ‘necessary for the assertion or protection of, the rights and interests of the State/ as, for example, where the district attorney fails or neglects, or is disqualified or incompetent, to prosecute the case.” [181 La. 822, 160 So. 427]. In deciding that the statute was constitutional and that the Attorney-General had not abused his discretion, the Court said:
 

 “The only difference between the language of this statute and the article of the Constitution is that, in the statute, the word ‘supplant’ is added to the words ‘relieve’ and ‘supersede/ and the discretion of the Attorney General, in the matter of relieving or superseding a district attorney, is declared absolute. As a matter of fact, the statute has added nothing of importance to the provisions of the Constitution itself. The addition of the word ‘supplant/ to the words ‘relieve’ and ‘supersede/ is only an example of the redundance which too often occurs in law phrases. And the provision that the discretion of the Attorney General in determining when he shall relieve or supersede a district attorney ‘shall not be questioned or inquired into by any court’ means nothing more than that the discretion of the Attorney General in that respect shall be absolute. It is contended by the district attorney that this provision of the statute is an attempt to vest a judicial function in the Attorney General, and to divest the courts of their jurisdiction in the premises, and is therefore unconstitutional. We do not think so. That provision in the statute in superfluous, because the Constitution itself provides that the Attorney General and his assistants shall have the power and authority to institute and prosecute or to intervene in criminal proceedings, as they may deem necessary, etc. The declaration that the discretion of the Attorney General in that respect shall not be questioned or inquired into by the courts does not interfere with the jurisdiction of the courts to inquire into the result of any criminal prosecution which the Attorney General has instituted or intervened in. It is not necessary to decide now whether an abusp of the discretion which is vested in the Attorney General might be inquired into by the courts. There is no showing of abuse of discretion in this case. * * * ” ; .
 

 A rehearing was not applied for in the case.
 

 The Court, through inadvertence, stated that the statute merely added the word “supplant” to the words “relieve” and “supersede”, which were already in the Constitution. As a matter of fact, this statement is incorrect, because neither of these words appear in Section 56 of Article VII of the Constitution. It was also incorrect to hold that the statute did not attempt to confer judicial functions on the Attorney-General and to divest the courts of their jurisdiction and did not attempt to deny the District Attorney his right under Section 6 of Article 1 of the Constitution to have the court decide whether or not the provisions in the statute conferring upon the Attorney-General the absolute and unre
 
 *151
 
 viewable discretion to supplant, relieve and supersede him were constitutional simply because the Act did not attempt to deprive the court of its jurisdiction to inquire into the result of the criminal prosecution by the Attorney-General. A criminal proceeding'between the State and a defendant would be an entirely different case from one between the Attorney-General and the District Attorney on this constitutional question. Even- if the defendant raised the issue that the Attorney-General was without authority to exclude the District Attorney in prosecuting him, the raising of that issue would be left to the discretion of the defendant and his'attorney. Under the express provisions of Section 63 of Article VII of the Constitution, the District Attorney would be prohibited from joining with the defendant to raise the point. If the Attorney-General, as in the Major case, supra, elected not to prosecute, the matter would end there. Therefore, the District Attorney would be powerless to present the issue and if the point were made by an accused, the district attorney would not have the right to join the defendant in the case in presenting the legal problem to the court. Finally, it will be noted that while the Court stated it was not necessary to pass upon the issue of whether or not the Court might inquire into the alleged abuse of the discretion by the Attorney-General, it did make the inquiry and held that there was no showing of abuse of the discretion in the case. The provision of the statute providing that the discretion of the Attorney-General shall not be questioned or inquired into by any court was either constitutional or unconstitutional. If it were constitutional, the court had no jurisdiction or authority to review the actions of the Attorney-General to determine whether or- not he exercised it arbitrarily. If that part of the statute were unconstitutional, it should have been so declared and the court would then have had the right and jurisdiction to determine if there had been any abuse in the exercise of the discretion by the Attorney-General.
 

 In the second case, the Grand Jury requested the Attorney-General to act as legal advisor because of some difference between the District Attorney and itself. The Attorney-General assigned one of his assistants to act as the advisor of the Grand Jury and he served foir a period of five months during which time the Grand Jury brought in indictments against the defendants who filed motions to quash them on the ground that the Attorney-General and his assistant had no right to relieve, supplant and supersede the District Attorney as the legal advisor of the Grand Jury. In annulling the judgment of the trial court quashing the indictment and overruling the motion, this Court said [197 La. 877, 2 So. 2d 636]:
 

 “In the case of State v. Major, 181 La. 822, 160 So. 425, the Attorney. General intervened and claimed the right to relieve and supplant the District Attorney in a criminal prosecution which the latter had instituted and was ready and willing to proceed with. The District Attorney contended that in Section 56 of Article VII of the Constitution the Attorney General was given the right to intervene and relieve and supplant a District Attorney only in cases
 
 *153
 
 where the District Attorney was neglecting his duty, and that the Act No. 24 of the First Extra Session of 1934, so far as it purported to allow the Attorney General to relieve and supplant the District Attorney in a case where he was not neglecting his duty, extended the authority of the Attorney General beyond that which was conferred by Section 56 of Article VII of the Constitution, and was to that extent unconstitutional. But our ruling was that this amendment of the article of the Code of Criminal Procedure, by using the words ‘relieve’, ‘supplant’, and ‘supersede’, did not really add anything to, but merely emphasized, the authority which was conferred upon the Attorney General by the provisions of Section 56 of Article VII of the Constitution — to institute or prosecute or to intervene in any criminal proceeding which the Attorney General might see fit to institute or prosecute or to intervene in.
 
 *
 
 * *
 
 >3
 

 Necessarily, the Court still considered correct its statement in the Major case that the statute merely added the word “supplant” to the words “relieve” and “supersede” contained in Section 56 of Article VII of the Constitution, because nothing is said in the opinion to indicate that that error had been discovered. The above error and failure to observe it could not either add to or detract from the provisions of the Constitution because to say otherwise would be recognizing another way in which the Constitution could be amended.
 

 The defendants therein contended that if the Court should hold that the Attorney General had the right to supersede the District Attorney as legal advisor of the Grand Jury, the law did not give him the right to serve in that capacity in an unlimited number of cases and for an indefinite period of time. In that case, the Attorney-General had served as advisor of the Grand Jury for about five months to the exclusion of the District Attorney and a large number of indictments against various parties were returned by it. This Court answered the contention by stating:
 

 “We doubt that any one of the defendants in these cases should be concerned with the Attorney General’s having served as legal advisor of the grand jury in relation to the case of any other of the defendants. The only one who might have been concerned with the extent to which the Attorney General served as legal advisor of the grand jury is the District Attorney.”
 

 The third case is not only relied upon by the Attorney-General but is cited by this Court in State v. Ardoin, supra, in support of the views therein expressed that the Attorney-General under the provisions of Act No. 24 of the First Extra Session of the Legislature of 1934, has the right to supersede the District Attorney in a criminal proceeding. In the De Armas case, some of the Grand Jurors had illegally obtained advice from outside attorneys and refused to take the advice of the District Attorney. In defiance of the judge’s order not to publicly present a certain document signed by some of the Grand Jurors and reflecting upon the District Attorney and his assistants, they, in a spectacular manner, did so and were removed by the court as Grand Jurors. The question of the
 
 *155
 
 constitutionality of Act No. 24 of the First Extra Session of 1934 was in no way involved. In answer to the question of counsel for the recalcitrant Grand Jurors what legal relief they were entitled to when the District Attorney and his assistants were misconducting themselves and violating the law, — the majority members of this Court stated that the Grand Jury could indict them for any crime that they might have committed; that the District Attorney would be subject to removal from office or impeachment if the charges were true and “ * * * they (the District Attorney and his assistants)
 
 might be superseded
 
 by the Attorney-General under the provisions of Act No. 24 of 1934, 1st Ex. Sess.” [193 La. 928, 192 So. 679.] (Italics and brackets ours.) We further declared “These charges (made by these grand jurors in the document against the District Attorney and his assistant)
 
 if proved to be true, might be sufficient reasons to justify the Attorney-General in superseding the District
 
 Attorney.” (Italics and brackets ours.) These statements are certainly not equivalent to declaring that the statute is constitutional and that the Attorney-General could supersede, supplant and relieve the District Attorney in any criminal proceeding in his discretion without any cause and that the courts have no right or authority to inquire into or question such action.
 

 'The rulings of this Court on two applications for writs under our supervisory jurisdiction simply followed the misstatement and erroneous views expressed in the Major case, supra, that there was no difference between the provisions of the Constitution and the provisions of the Act. However, since our attention has been called to these errors and as there are other grounds of unconstitutionality of the statute alleged here that go far beyond the limited issues presented in the previous cases, supra, we certainly would not be justified in now holding that those cases are controlling in the instant one.
 

 As the other constitutional issues raised herein were not considered by us in previous opinions, it is not necessary to decide those constitutional points here, in view of our above conclusions.
 

 We refrain from attempting to state generally in this opinion the extent of the Attorney-General’s powers and the Legislature’s authority under Section 56 of Article VII of the Constitution, because we have before us only the constitutionality of the Act of the Legislature granting the Attorney-General the right to supplant and supersede the District Attorney and the actions of the Attorney-General in exercising the powers granted to him thereby. To go further than necessary in deciding the present case would result in giving expression to obiter dictum. Each case must be decided as it arises and is presented to us.
 

 In answer to the argument that confusion would result between the offices of the Attorney-General and the District Attorneys if Act No. 24 of the First Extra Session of 1934 were declared unconstitutional, it is sufficient to say that the effect of our present decision holding the part of the statute attacked in the instant case unconstitutional will leave the law in the identical condition it was from 1921 to
 
 *157
 
 1934, during which time there was less confusion on the question of the Attorney-General’s right to supplant and supersede the District Attorneys than there has been since the statute was adopted.
 

 For the reasons assigned, it is ordered, adjudged and-decreed that our original decree affirming the judgment of the district court is reinstated and made the final judgment of this Court.
 

 FOURNET, J., concurs in the views expressed in the majority opinion and will assign additional reasons.
 

 O’NIELL, C. J., dissents and hands down reasons.
 

 ROGERS, J., concurs in part and dissents in part and hands down reasons.
 

 ODOM, J., dissents.