**12 So.2d 798**

**In re MERAUX.**

No. 36916.

Feb. 1, 1943.

Rehearing Denied March 8, 1943.

Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, and Frank Wm. Hart and Benjamin Y. Wolf, both of New Orleans, for Supreme Court Committee on Professional Ethics and Grievances.

St. Clair Adams, of New Orleans, for defendant.

HIGGINS, Justice.

The Louisiana State Bar Association, through the Committee on Professional Ethics and Grievances, instituted this disbarment proceeding against the former district judge for alleged misconduct and unethical acts. The grounds upon which his disbarment is sought are the same as those for which he was recently removed as a district judge by this Court. Perez v. Meraux, 195 La. 987, 197 So. 683; Id., 201 La. 498, 9 So.2d 662. The charges are based exclusively upon his official acts and are in substance as follows: (1) That he fraudulently exercised the authority vested in him as a judge in approving bills against the police jury of Plaquemines Parish for the account of the grand and petit juries and had the payments credited to his personal account, thereby obtaining the parish's money for his own use; (2) that he unlawfully deferred the imposition of sentences upon defendants who pleaded guilty before him to charges of embezzlement and unlawful possession of marijuana, respectively; (3) that he illegally paroled an accused convicted of burglary; and (4) that, in collusion with the principals and attorneys in seventy divorce and annullment of marriage cases, he granted illegal judgments where it clearly appeared that the court was without jurisdiction of the parties or subject matters before it and without any lawful grounds or evidence justifying the decrees.

The defendant filed exceptions to the jurisdiction of the court ratione materiae, and of no right and no cause of action, averring that under Article VII, Section 10 (par. 2), of the Constitution of 1921, this Court has exclusive original jurisdiction only in disbarment cases " * * * involving misconduct of members of the bar * * * and in suits for removal of judges of courts of record from office as elsewhere provided in this Constitution"; that under Section 3 of the above Article of the Constitution, "No functions shall ever be attached to any court of record, or to the judge thereof, except such as are judicial; nor shall such judges practice law * * *"; that the said misconduct and unethical acts of the defendant are alleged to have happened during a period of time when he was prohibited from practicing as an attorney-at-law or member of the bar and are stated to have been committed by him in his official capacity as a district judge; that under Article IX, Section 5 of the Constitution of 1921, the sole and only penalty that can be imposed upon a judge of a court of record, when removed from office by a judgment of this Court, is "destitution of office"; that the disciplinary action for official misconduct of judges is, exclusively, removal from office, and disbarment proceedings are not authorized; and that in Article XXII, Section 1 (par. 7), of the Constitution of 1921, it is expressly stated that the Constitution of 1921 supersedes the Constitutions of 1898 and 1913 and all amendments thereto, except as therein otherwise specifically provided.

The Committee contends that under Article VII, Section 33 of the Constitution of 1921, one of the requirements of eligibility to be a judge is that the person be

learned in the law and shall have practiced law in this State for a period of five years; that under the Articles of Incorporation of the Louisiana State Bar Association, approved by this Court, on March 12, 1941, and passed by notarial act before Cuthbert S. Baldwin, Notary Public, on March 15, 1941, all judges of State and Federal courts are made members thereof; that, as the defendant has been removed as district judge, he is presently a member of the Bar eligible to practice and, therefore, subject to this Court's jurisdiction for disciplinary action for misconduct and unethical acts; and that his official and personal misconduct show he is lacking in moral fitness to practice law and he should be disbarred.

The defendant's attorney counters by stating that as the court and the Committee were without any right, authority, or jurisdiction to take disciplinary action by disbarment proceedings against the judge, while he was an incumbent, for alleged official misconduct and unethical practices, neither has the Court nor the Committee any right or jurisdiction to thus proceed against him on those same charges after he has been removed.

Article VII, Section 10 of the Constitution of 1921, which vests jurisdiction in the Supreme Court, provides:

"It shall have exclusive original jurisdiction in all *disbarment cases involving misconduct of members of the bar, with the power to suspend or disbar* under such rules as may be adopted by the court, and in suits for removal of judges of courts of record from office as elsewhere provided in this Constitution." (Italics ours.)

This Court adopted rules under the above quoted section and Article of the Constitution. The pertinent rules contained in Article XIII, Sections 4 and 5 of the Articles of Incorporation of the Bar Association, read:

"Section 4. Disbarment and Suspension. If, after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has probably been *guilty of a violation of the laws* of the State of Louisiana *relating to the professional conduct of lawyers and to the practice of law, or of a willful violation of any rule of professional ethics of sufficient gravity as to evidence a lack of moral fitness for the practice of law,* it shall be the duty of the Committee to institute in the Supreme Court a suit for the disbarment or suspension of the accused member of the bar, and to designate one or more of their number to prosecute the same."

"Section 5. Reprimand. If after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has not been guilty of such misconduct as to require a suit for disbarment or suspension, but is nevertheless of the opinion that the member has been *guilty of a willful violation of a rule of professional ethics,* it shall be the duty of the Committee to reprimand the member privately in writing." (Italics ours.)

■ A reading of the clear and unambiguous language of the above quoted

Section 10 of Article VII of the Constitution leaves no doubt that the members of the Constitutional Convention confined the jurisdiction of this Court, in disbarment proceedings, to members of the Bar for misconduct committed while they were qualified and eligible to practice law. There is nothing contained in the above constitutional grant of jurisdiction to this Court which would authorize us to disbar a member of the Bar for official misconduct committed in his capacity as a judge, when he was ineligible to and disqualified from practicing law. It is obvious that the Committee would have no right, under our rules, and this Court would have no jurisdiction, under the above quoted Section of the Constitution, to entertain jurisdiction of a disbarment proceeding against a district judge for alleged official misconduct before he was removed from office. In fact, the Committee concedes this point and therefore it necessarily follows that if the Committee and the Court were without right and power to disbar a sitting judge, as a member of the Bar, for official misconduct, they also lacked authority to have him disbarred subsequent to his removal from office for the same official misconduct for which he was removed.

It appears from the above quoted Rules of this Court that it was our view, when they were adopted by us, that disbarment proceedings were confined by the Constitution to members of the Bar for misconduct and unethical practice, because no provision is made whatsoever for the disbarment of a sitting or a removed judge for official misconduct and unethical practices committed by him.

In the case of Louisiana State Bar Association v. Connolly, 201 La. 342, 9 So.2d 582, 586, we said:

"However, in spite of any notions we may entertain respecting the intention of the members of the Constitutional Convention of 1921, the language used in Section 10 of Article VII is too clear and direct in its meaning to authorize us to inquire into the reasons which prompted the Convention to limit our jurisdiction to matters 'involving misconduct of members of the bar'."

Article IX of the Constitution of 1921 deals with impeachment and removal from office. Section 1 and the pertinent parts of Sections 2 and 5 thereof read as follows:

"§ 1. All State and district officers, whether elected or appointed, shall be liable to impeachment for high crimes and misdemeanors in office, incompetency, corruption, favoritism, extortion, or oppression in office, or for gross misconduct, or habitual drunkenness."

"§ 2. All impeachments shall be by the House of Representatives, and shall be tried by the Senate, whose members shall be upon oath or affirmation for that purpose, and two-thirds of the senators elected shall be necessary to convict. * * * Judgment of conviction in such cases shall remove and debar the accused from holding any office under the State, and shall disqualify any judge or district attorney, or attorney general from practicing law, but whether of conviction or acquittal, shall not prevent prosecution and punishment otherwise according to law. * * *"

"§ 5. For any of the causes specified in Section 1 hereof, the judges of the courts of record may be removed by judgment of the Supreme Court, which is hereby vested with original jurisdiction therein, and may make such rules for the speedy and economical trial thereof as it deems proper. * * *"

In the Constitutions of 1845, 1852, 1864, 1868 and 1879 there was not any provision disqualifying a judge from holding public office and from practicing law, in the event there was a judgment against him removing him from office. These additional penalties were imposed only in cases where the judge was impeached.

There is provided in Articles 221 of the Constitutions of 1898 and 1913 a threefold penalty, in cases of removal of a judge from office: (1) Removal from office; (2) disqualification from holding any office of honor, trust, or profit under the State; and (3) disbarment from the practice of law. From the above quoted provisions of Article IX of the Constitution of 1921, it is clear that the framers of the Constitution intentionally and deliberately made the sole penalty for official misconduct of a judge "removal from office" because the provisions disqualifying him from holding an office of honor, trust, or profit under the State, and disbarring him from the practice of law were entirely omitted from Section 5 of Article IX dealing with removal from office, and those penalties were placed only in Section 2, which governs impeachment. The defendant was removed from office and not impeached.

In Louisiana State Bar Ass'n v. Connolly, supra, and Louisiana State Bar Ass'n v. Leche, 201 La. 293, 9 So.2d 566, we held that where the framers of the Constitution of 1921 did not use the word "professional" in Article VII, Section 10, before the phrase "misconduct of members of the bar" as it appeared in Article 85 of the Constitutions of 1898 and 1913, the change was intentional and, therefore, granted the Court jurisdiction to disbar members of the Bar for both professional and nonprofessional misconduct. So, in the instant case, there can be no doubt that the failure of the delegates to the Constitutional Convention to repeat in Section 5 of Article IX of the Constitution of 1921 the penalties of disqualification from holding office and disbarment from practicing law as contained in Articles 221 of the Constitutions of 1898 and 1913, where a judge was removed from office for official misconduct, was not an oversight but was deliberate and, therefore, clearly manifests the intention to make divestiture of or removal from office the sole penalty for official misconduct by a judge.

It has been uniformly held in this State that where the Constitution provides a particular method for the removal of an official from his office that method is exclusive. State v. Gravolet, 168 La. 648, 123 So. 111; State v. Dunson, 138 La. 131, 70 So. 61; State v. Bain, 137 La. 308, 68 So. 621; State v. Judges, 35 La.Ann. 1075; State v. Lamantia, 33 La.Ann. 446; and State v. Carey, 28 La.Ann. 49.

In the case of In re Borie et al., 1928, 166 La. 855, 118 So. 45, the Court stated:

" * * * the official conduct of public officers is not subject to review in disbarment proceedings, for what they do officially is not done in the capacity of attorneys at law, but by virtue of their office. State v. Standard Oil Co., 164 La. 334, 113 So. 867; State ex rel. Duffel v. Marks, 30 La. Ann. 97, 113."

In State v. Standard Oil Co., supra, the Court held that a justice of the Supreme Court was not subject to recusation under the Act of 1918, where his son appeared before the Court in a case representing the State in his official capacity as assistant attorney-general and not in his capacity as an attorney-at-law.

See, also, In re Silkman, 88 App.Div. 102, 84 N.Y.S. 1025; In re Strahl, 201 App. Div. 729, 195 N.Y.S. 385; and Baird v. Justice's Court, 11 Cal.App. 439, 105 P. 259.

█ It is the contention of the Committee that the acts of the defendant in obtaining the Parish funds for his personal account by fraudulently approving bills against the Police Jury should be considered both official and personal misconduct of such a nature as to seriously affect the moral fitness and integrity of the defendant to practice law.

The defendant as district judge wrongfully approved the fraudulent invoices by virtue of the authority vested in him by Section 1042 of the Revised Laws of Louisiana (Wolff's–1897). While it is true that the result of his official acts in approving these fraudulent bills redounded to his personal benefit, there can be no doubt that he was acting officially and not personally.

The statement that the defendant, under the above circumstances, should be disbarred is a matter that addresses itself to those who have the right to amend the Constitution but not to this Court, because, as already demonstrated, the provisions of the Constitution, as they presently exist, do not give us the authority or right to disbar a removed judge for the same acts of official misconduct for which he was removed. In other words, the Constitution does not give this Court the right, after it has removed a judge for official misconduct, to then add an additional penalty, based upon the same evidence or the same facts, by disbarring him as a member of the Bar, because the Constitution provides for only one penalty and also states that while a judge is serving on the bench he shall not practice law. It is difficult to understand how a judge could be said to be acting professionally or nonprofessionally as a member of the Bar, when, at the very time he was officially misconducting himself, the Constitution expressly forbade him to practice law. Of course, if what the judge did in his official capacity is a violation of any criminal statute of the State, he would be subject to prosecution for that offense, because the Constitution and the laws of this State make provision for such a proceeding and punishment.

██ The Committee's contention that as the grounds for impeachment and removal from office of a judge are identical, the penalties should likewise be the same and that as the nature of the defendant's

acts of misconduct show he is lacking in moral fitness and integrity to continue as a member of the Bar and to practice law, the penalty of disbarment in addition to divestiture of office should also be imposed upon him, properly addresses itself to those who are authorized to amend the Constitution and not to us. This Court is clearly without any right whatsoever to amend the Constitution so as to enlarge or extend its jurisdiction and provide for a penalty where the Constitution does not do so, under the guise of interpreting it. We are powerless to invoke and apply the additional penalties of disbarment and disqualification to occupy any office of profit, trust, or honor under the State, as provided in Articles 221 of the Constitutions of 1898 and 1913, where a judge was removed from office, because paragraph 7, section 1 of Article 22 of the Constitution of 1921 provides: "The Constitutions of this State, adopted in 1898 and 1913, and all amendments thereto, are declared to be superseded by this Constitution, except as herein otherwise specially provided." There is no provision in the Constitution of 1921 retaining the additional penalties of disbarment and disqualification or ineligibility to hold public office where a judge has been removed from office, the sole and exclusive penalty provided therefor being divestiture of office.

The Committee has not referred us to any decision of this Court but cites several cases from other jurisdictions, as follows: In re Rempfer, 51 S.D. 393, 216 N.W. 355, 55 A.L.R. 1346; State of Connecticut v. Peck, 88 Conn. 447, 91 A. 274, L.R.A.1915A, 663, Ann.Cas.1917B, 227; 9 A.L.R. 195, 196; In re Stolen, 193 Wis. 602, 603, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355; In re Spriggs, 36 Ariz. 262, 284 P. 521, and Bar Association v. Sullivan, 185 Cal. 621, 198 P. 7; 43 A.L.R. 108.

In the Rempfer case, supra, the issues involved in the instant case were not even raised, and it further appears that the county judge, against whom the disbarment proceedings were brought, was permitted to practice as an attorney-at-law, under the law of South Dakota.

The case of State v. Peck, supra, is not in point for two reasons: First, the law did not require the probate judge to be an attorney and, therefore, his disbarment could not have any effect upon his official status; and, second, it appears that the probate judge was entitled to practice law and fraudulently claimed the sum of "* * * $750 as compensation for pretended services rendered by him as an attorney on behalf of the estate." [88 Conn. 447, 91 A. 277, L.R.A.1915A, 663, Ann.Cas. 1917B, 227.]

In the case of In re Stolen, supra, it was held by a divided court that the office of judge of the superior court of Dane County was created by a legislative act and not by the Constitution; that the Legislature had required a judge of that court to be a member of the bar of the county; that the statute also provided for the manner of the removal of such a judge; that the constitutional removal provisions related only to judges of the supreme and circuit courts; that "the respondent, therefore, was not within the protection of the Constitution, and we are not now concerned with the question of whether the constitutional pro-

vision thus invoked was intended to place any limitations upon the power of this court to discipline the members of its bar" [193 Wis. 602, 214 N.W. 382, 55 A.L.R. 1355]; that the legislative act creating the superior court of Dane County did not in any way limit the Supreme Court's inherent power to discipline members of the bar; that the plea to the court's jurisdiction on the ground that a judge who had resigned could not be disbarred for official misconduct was without merit and the authorities cited to sustain the exceptions were disapproved; and that the acts of the defendant affected his moral character for honesty and integrity. The defendant was disbarred with the privilege of applying for reinstatement after five years. One of the justices took no part and another dissented on the ground that the court was without jurisdiction and the punishment was too severe.

In the Spriggs disbarment case, supra, it appears that the attorney obtained a judgment for his client and had it recorded. Subsequently, he was elected a judge of the Superior Court of Graham County. After the prescriptive period of five years had run against the judgment, the judge prepared an affidavit of renewal thereof and prevailed upon a deputy clerk of his court to anti-date the filing of it. Under Section 12 of Article 6 of the Constitution of Arizona, the judge was prohibited from practicing law during his continuance in office, and under Section 13 of the same Article, he had to be a member of the Bar to qualify as judge. Under his demurrer, the defendant contended that he was only amenable to the provisions of the Consti-

tution providing for impeachment or recall of a delinquent public officer for official misconduct. The court took judicial notice that the defendant was no longer a judge of the Superior Court and on that ground found it unnecessary to pass upon the constitutional question raised. The court proceeded under its inherent power and in a per curiam opinion decided that even if the defendant were still a sitting judge, his official position would not protect him from disbarment proceedings where the misconduct was of such a nature to justify disbarring him as an attorney, quoting at length from In re Stolen, supra. Three justices of the court concurred and one recused himself.

We have already shown that the Stolen case is inapplicable here because the office of the Superior Court of Dane County was created by a legislative act, which did not limit the court's inherent power, and the judge was not protected by the removal provisions of the Constitution, as in the instant case.

It is clear that this court cannot exercise its inherent power beyond the limitation placed thereon by our Constitution and contrary to the constitutional right of a removed judge to be penalized solely and only by divestiture of office for official misconduct.

In Bar Ass'n of San Francisco v. Sullivan, supra [185 Cal. 621, 198 P. 8, 43 A. L.R. 108], the respondent was charged with misconduct involving moral turpitude—accepting bribes, etc.,—while serving as police judge of the City and County of San Francisco. Sub-section 5, section 287 of

the Code of Civil Proc. provided that an attorney may be disbarred "for the commission of any act involving moral turpitude, dishonesty or corruption, whether the same be committed in the course of his relations as an attorney or counsellor at law, *or otherwise*." (Italics ours.) The only issue raised in the case was one of fact, namely, whether or not the evidence was sufficient to prove the alleged charges. By a divided court, it was decided that the evidence was insufficient. One judge dissented.

There are statements in the above cases that cannot be reconciled with the holding of the court in In re Silkman; In re Strahl and Baird v. Justice's Court, supra. In short, there appears to be a division of authority on this question. In this connection we may state that none of the cases cited by. the Committee is in point because the background of the constitutional and statutory laws controlling those cases are different from and are in no way comparable to the Louisiana constitutional provisions.

■ The argument of the Committee that judges are members of the integrated Bar and, therefore, subject to the disciplinary authority of the Court and the Committee on Professional Ethics and Grievances, is not sound, because judges are inactive members of the Bar under the express provisions of the Constitution, and this fact is recognized in the Notarial Charter of the Association itself, which specifically states that judges are members of the Association, without the right to hold office, and are exempt from the payment of dues. (Article IV, Section 1, par. 2; Section 2, Act 54 of 1940.) Furthermore, we reiterate that neither the Constitution nor the Rules of this Court contemplate disbarment proceedings against either an incumbent or removed judge for official misconduct only, the exclusive remedies in such cases being removal from office and criminal prosecution where the official misconduct constitutes a crime.

It appears that there have been only three instances in the history of this State in which district judges have been removed from office: State ex rel. v. Lazarus, 1887, 39 La.Ann. 142, 1 So. 361; Stanley, Atty. Gen., v. Jones, 1942, 201 La. 549, 9 So.2d 678, and Perez, Dist. Atty., v. Meraux, 1942, 201 La. 498, 9 So.2d 662. In the first case, after the judge was divested of his office, he again began the practice of law and there is no record where the Bar Association filed disbarment proceedings against him. The judges, in the latter two cases, were removed by decisions of this Court handed down the same day and the Committee now seeks to have both of them disbarred for official misconduct. See In the Matter of James W. Jones, Jr., La.Sup., 12 So.2d 795, this day decided.

The Constitution having limited our jurisdiction in disbarment proceedings against members of the Bar for misconduct and having provided as the penalty for removal from office of a judge for official misconduct divestiture of office only, the exceptions to the jurisdiction of the court ratione materiae and of no right and of no

cause of action are well founded and are sustained.

For the reasons assigned, the disbarment proceedings against J. Claude Meraux are dismissed.