**UNITED STATES of America,**
**Appellee,**

v.

**Dabney OVERTON, Appellant.**

**No. 10324.**

United States Court of Appeals
Fourth Circuit.

Argued March 9, 1966.

Decided March 30, 1966.

Wm. B. McLeod, Whitestone, Va. (Ammon G. Dunton, Whitestone, Va., on brief), for appellant.

C. V. Spratley, Jr., U. S. Atty. (Samuel W. Phillips, Asst. U. S. Atty., on brief), for appellee.

Before BRYAN, Circuit Judge, MARVIN JONES, Senior Judge*, United States Court of Claims, and CRAVEN, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Convicted upon his plea of guilty to three counts of an information charging willful failure to file Federal income tax returns, 26 U.S.C. § 7203, Dabney Overton appeals the sentence of imprisonment for 3 months. The entire judgment was a fine of $5000 and 1 year imprisonment,

---

* Sitting by designation.

with suspension of 9 months thereof upon payment of fine and costs in 30 days, both of which were timely paid. We affirm.

Recognizing that a sentence within permissible statutory limits, as here, is generally not reviewable, United States v. Pruitt, 341 F.2d 700 (4 Cir. 1965), appellant Overton asserts that presently there are "exceptional circumstances", in that: (1) the sentence was passed under a material mistake of fact on the part of the District Judge, and (2) because of the precarious state of his health, "insofar as it imposes confinement" it amounts to a cruel and unusual punishment forbidden by the Eighth Amendment. While this argument actually calls for a review of the sentence, we undertake it rather than to maintain a policy at the risk of inflicting an injustice.

The mistake of fact urged is that the District Judge was under the impression that "the defendant had not filed Federal Income Tax returns for a large number of years", and "the Court still firmly felt that this defendant had not filed all of his Federal Income Tax Returns".[1] In truth, there was no misapprehension. On the contrary, the District Judge was altogether correct in his understanding. That returns had not been seasonably filed for at least 7 tax years, a delinquency stretching from 1955 to 1962, was not denied. A question of whether there had also been a failure to file for prior years was injected inadvertently by the testimony of the revenue agent that the default extended back to 1935, but the statement was immediately corrected to "1955". Besides, the plea of guilty admits 3 years' delinquency.

The point of the argument is that *at the time of sentence* all returns had been filed. But they had only been filed after the information was presented, indeed only the day before the plea was entered. Obviously, the judge's comments which were quoted to illustrate the alleged mis-

apprehension refer to the failure to make the returns *as and when required*.

The sentence was far from harsh. Appellant Overton was a lawyer, a regular practitioner for many years, often preparing tax returns for clients. Until the day of his arraignment, May 6, 1965, he had constantly pursued his profession. On that day the court was told that he was suffering from "a severe heart condition, high blood pressure, and diabetes", and his condition "such that confinement will certainly be seriously injurious to his health, and may lead to his death". On the recommendation of his physicians, the case was continued so he could be hospitalized.

Leaving the hospital after a stay of twelve days, he returned home "with the understanding that he was to take a vacation and not do any work", which he followed with improvement. Examined at intervals thereafter, he was advised, September 30, 1965, to "stay on his present treatment and * * * not go back to full time work yet, and that I [his physician] would be against him starting out his first case of trial before the Supreme Court; I thought it would be better to go before the Lower Courts in case *he was going to do actual* court or jury work". (Accent added.)

The Court waited until October 14, 1965—more than five months after his plea—to sentence Overton. The intervening medical reports were taken into consideration, including the report of his capability to do court work. On October 22, 1965, the Court heard appellant's motion to reduce the sentence on the basis of impaired health. It was denied.

Determination of the punishment was for the District Judge. He was manifestly conscientious and considerate, mindful of the circumstances upon which the appellant asked leniency. Certainly the 3-month sentence was not a cruel or unusual punishment.

1. As it was not a part of the record before the District Court, on motion of the United States, an affidavit filed in this court during the appeal and purporting to support this contention of the appellant is rejected.

**30**

Sentencing is an unenviable and distressing task, a responsibility every judge approaches with deep concern and prayerfully. Nevertheless it is a duty, stern though it be. He is not aided by emotional appeals for sympathy, nor by the repeated stressing of the gravity of his responsibility. Already he is keenly sensitive to these considerations. When he has exercised his best judgment in the circumstances, he has done all that may ever be expected of him.

However, in view of the medical opinions in evidence and the lapse of time since sentence, we think it not amiss to offer a suggestion which may afford the District Judge some additional help. Before actual commitment he might obtain an impartial opinion of the appellant's condition. With the assistance of the Court's probation officers, such an opinion could be procured through an examination of the appellant by the doctors, or in the hospitals, of the Bureau of Prisons, the United States Public Health Service, or other Governmental agencies. The report from any of these sources would provide a current and wholly detached appraisal of the appellant's physical ability to withstand the effects of commitment, and would also advise the judge of the medical services and hospitalization available in prison.

Affirmed.