656 So.2d 292 (1995)
In re Hilry HUCKABY, III.
No. 95-O-0041.
Supreme Court of Louisiana.
May 22, 1995.
Rehearing Denied June 30, 1995.
*293 Nancy C. Chachere, Steven R. Scheckman, Hugh M. Collins, New Orleans, for applicant.
Hilry Huckaby, III, Ronald J. Miciotto, Shreveport, Donald G. Kelly, Natchitoches, Donald R. Miller, Robert E. Piper, Jr., Shreveport, for respondents.
Gregory F. Gambel, Robert A. Kutcher, New Orleans, T. Haller Jackson, III, Shreveport, for disciplinary board.
KIMBALL, Justice.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that respondent, Judge Hilry Huckaby, III, of the First Judicial District Court for the Parish of Caddo, State of Louisiana, be removed from office. The judiciary commission conducted investigatory hearings, made findings of fact and law, and recommended that respondent be removed from office for violating Canons 1 and 2 A of the Code of Judicial Conduct and for engaging in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La. Const. art. V, § 25(C).

FACTS
Respondent took office as a judge of the First Judicial District Court for the Parish of Caddo on January 1, 1993.[1] On June 29, 1994, the United States Attorney for the Western District of Louisiana filed an "Information" charging respondent with one count of violating 26 U.S.C. § 7203 by failing to file a federal income tax return, a misdemeanor offense under federal criminal law. The "Information," *294 and the "Factual Basis" submitted in support thereof, alleged that respondent, who received gross income of $301,734.00 during the 1987 calendar year, was required by federal law to file an income tax return on or before April 15, 1988. These documents also alleged that respondent requested and received an extension, giving him until August 15, 1988 to file his return, but respondent willfully failed to timely file the return, in violation of 26 U.S.C. § 7203.
On June 24, 1994, respondent executed a written plea agreement with the United States Government wherein he agreed, inter alia, to plead guilty to one count of violating 26 U.S.C. § 7203. Pursuant to the agreement, on June 30, 1994, respondent pled guilty to one count of violating 26 U.S.C. § 7203 before the United States District Court for the Western District of Louisiana, Shreveport Division, in the matter entitled United States of America v. Hilry Huckaby, III, No. 94-50059-01.
On October 13, 1994, respondent appeared before the court for a FED.R.CRIM.P. 11(e)(4) hearing. At that time, the court notified him that it would not accept the plea agreement he had reached with the prosecution. After advising respondent that the disposition of his case might be less favorable than the plea agreement had contemplated, the court offered him the opportunity to withdraw his guilty plea. Respondent declined, and the court set his sentencing for November 18, 1994.
On November 18, 1994, the court sentenced respondent to a twelve month prison term, one year of active supervised probation after his release from prison, and a $5,000.00 fine. The court also ordered respondent to pay the full sum of his tax liability for 1987. Respondent's conviction and sentence were affirmed in United States v. Huckaby, 43 F.3d 135 (5th Cir.1995).

JUDICIARY COMMISSION PROCEEDINGS
On August 15, 1994, the Judiciary Commission of Louisiana filed the following formal charge against respondent:

CHARGE I
A. Judge Hilry Huckaby, III on June 3,[2] 1994 pled guilty, in open court, in Case Number XX-XXXXX-XX before the United States District Court for the Western District of Louisiana, Shreveport Division, in the matter entitled United States of America v. Hilry Huckaby, III, to one count of violating 26 U.S.C. § 7203 relative to failing to file an income tax return for the calendar year 1987. Hilry Huckaby, III had and received gross income of $301,734.00 in calendar year 1987.
B. By reason of the foregoing Section A, you have:
(1) Violated Canons 1 and 2A, of the Code of Judicial Conduct, adopted by the Supreme Court of Louisiana, effective January 1, 1976; and
(2) Engaged in willful misconduct relating to your official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
On August 29, 1994, respondent answered the commission's formal charge. Respondent admitted the factual allegations in Count I(A), but denied the allegations of law in Count I(B). Respondent also submitted, as an affirmative defense, that the conduct giving rise to the disciplinary action occurred before he stood for election to judicial office and before he took his oath of office.
The commission held hearings on October 14, 1994 and December 16, 1994. On January 6, 1995, the commission rendered findings of fact and conclusions of law, and issued a recommendation regarding the appropriate measure of discipline in this case. The commission found, as a matter of law, that respondent violated Canons 1 and 2A of the Code of Judicial Conduct and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute by pleading guilty to one count of violating 26 U.S.C. § 7203. The commission further found that because respondent did not file the 1987 tax return until January 14, 1993, ten days after *295 he became a judge, respondent's conduct continued through his campaign for, and assumption of, judicial office. The commission ultimately concluded respondent is unfit to hold judicial office and recommended that respondent be: (1) disqualified from exercising any judicial function, without loss of salary, during the pendency of proceedings in the supreme court pursuant to Article V, § 25(C) of the Louisiana Constitution; (2) removed from office as a judge of the First Judicial District Court for the Parish of Caddo; (3) ordered to reimburse the commission for the $271.50 in out-of-pocket expenses the commission incurred in the investigation and prosecution of his case, pursuant to Supreme Court Rule XXIII, § 22. On January 12, 1995, this court accepted the commission's first recommendation by issuing an order disqualifying respondent from exercising any judicial function during the pendency of disciplinary proceedings in this court.

DISCUSSION
Louisiana Const. art. V, § 25(C) vests this court with exclusive original jurisdiction in judicial disciplinary cases:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. On recommendation of the judiciary commission, the supreme court may disqualify a judge from exercising any judicial function, without loss of salary, during pendency of proceedings in the supreme court. On recommendation of the judiciary commission, the supreme court may retire involuntarily a judge for disability that seriously interferes with the performance of his duties and that is or is likely to become permanent. The supreme court shall make rules implementing this Section and providing for confidentiality and privilege of commission proceedings.
As the foregoing constitutional language makes clear, this court's disciplinary power, which includes the power to remove judges, can only be invoked upon the judiciary commission's recommendation. See Small v. Guste, 383 So.2d 1011 (La.1980).
In determining whether to remove a judge, we are mindful that the removal of a duly elected member of the judiciary is an extremely serious undertaking which should only be borne with the utmost care because such a removal disrupts the public's choice for service in the judiciary. However, when making that determination, we are guided by the language of this state's constitution and the Canons of the Code of Judicial Conduct, which are binding upon members of the judiciary. See La.R.S. 42:1167; In re Wilkes, 403 So.2d 35 (La.1981); In re Babineaux, 346 So.2d 676 (La.1977), cert. denied, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977). Violations of the Canons of the Code of Judicial Conduct can, without more, serve as a basis for discipline under Article V, § 25(C). In re Chaisson, 549 So.2d 259 (La.1989).
The commission found that respondent violated Canons 1 and 2 A of the Code of Judicial Conduct. Canon 1, entitled "A Judge Should Uphold the Integrity and Independence of the Judiciary," provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Part A of Canon 2 of the Code of Judicial Conduct entitled, "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities," states:
A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
*296 We recognized in In re Whitaker, 463 So.2d 1291, 1298 (La.1985), that because this court is the court of original jurisdiction in judicial disciplinary proceedings, it serves as the finder of fact in such proceedings. However, because this court is not equipped to receive evidence, the evidence in judicial disciplinary proceedings is received at the hearing before the commission, and factual determinations are made by this court on the basis of the record of the hearing. Id.
The standard of proof in judicial discipline cases is the clear and convincing standard. In re Chaisson, supra; In re Daniels, 340 So.2d 301 (La.1976). This standard requires that the level of proof must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt. L.S.B.A. v. Edwins, 329 So.2d 437, 442 (La. 1976). Respondent's testimony before the commission and the documentary exhibits introduced into evidence demonstrate that the judiciary commission's findings are supported by clear and convincing evidence. Because respondent admitted the factual allegations the commission made against him, the facts of this case are not in dispute. Respondent, who received a gross income of $301,734.00 in 1987, was granted one filing extension until August 15, 1988 but received no other filing extensions. Although United States Internal Revenue Service agents seized respondent's tax and financial records in January of 1990, nothing prevented respondent from filing his 1987 return any time prior to the seizure of those records. At any time between the seizure of his records and their return in 1993, respondent could have estimated his 1987 income and prepared a return. However, respondent did not file his return until January 14, 1993, 10 days after he became a judge. Ultimately, he pled guilty to the federal misdemeanor of failing to timely file his return and was sentenced to, among other things, one year in a federal penitentiary. Moreover, in addition to admitting the conduct giving rise to his imprisonment for failing to timely file his 1987 return, respondent also admitted that he failed to timely file or pay his federal or state income taxes every year from 1981 to 1992. Thus, in addition to revealing that respondent failed to timely file his 1987 federal tax return, the record in this case contains clear and convincing evidence that respondent failed to timely file and pay his taxes for the twelve years immediately preceding his election to the judiciary.[3] The record also indicates that even though respondent collected $300,000.00 in proceeds after selling a ¼ interest in a radio station, he consumed the proceeds of the sale and continues to owe over $75,000.00 in federal taxes and over $40,000.00 in state taxes. Our review of the record satisfies us that the judiciary commission's findings are supported by clear and convincing evidence.
The judiciary commission argues that respondent's conduct, as a matter of law, warrants his removal from office. Relying on In re Whitaker, supra, respondent maintains his conduct does not warrant removal. Respondent argues that in Whitaker, this court stated:
[t]he most severe discipline should be reserved for judges who use their office improperly for personal gain; judges who are consistently abusive and insensitive to parties, witnesses, jurors and attorneys; judges who because of laziness or indifference fail to perform their judicial duties to the best of their ability; and judges who engage in felonious criminal conduct.
See Whitaker, 463 So.2d at 1303.
The four types of conduct we recognized in Whitaker as warranting removal were not intended as an exclusive list of the types of conduct for which a judge can be removed from office. Indeed, both La. Const. art. V, § 25 and the Code of Judicial Conduct contemplate, and allow, removal for a broader range of offenses than the illustrative list set *297 forth in Whitaker. Under Article V, § 25(C), a judge may be removed from office for, among other things, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and, as indicated supra, violations of the Canons of the Code of Judicial Conduct also serve as a basis for imposition of judicial discipline. As such, our inquiry in this case is narrow: Did respondent's conduct, as admitted, violate Canons 1 and 2 A as quoted, supra, and is that conduct "persistent public conduct prejudicial to the administration of justice that brings the judicial office into disrepute" to such an extent that respondent should be removed from office?
It is undisputed that respondent did not file his 1987 income tax return until January 14, 1993, ten days after he became a judge on January 4, 1993. The record also indicates respondent's failure to file his 1987 tax return continued throughout his campaign for, and through the time he assumed, judicial office. Moreover, it is undisputed that respondent was charged with and pled guilty to failing to file his 1987 tax return, and was sentenced to a twelve month prison term while sitting as a state district court judge. Similarly, the record indicates respondent failed to timely file and pay his taxes every year for the twelve year period from 1981 to 1992, and is currently delinquent in his tax obligations to both the state and federal governments. By engaging in the aforementioned conduct, respondent failed to "personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved," and thereby violated Canon 1 of the Code of Judicial Conduct. Similarly, this conduct is evidence of respondent's failure to "respect and comply with the law and ... act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," in violation of Canon 2 A of the Code of Judicial Conduct.
With respect to the issue of whether respondent engaged in "persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute," we recognized in Whitaker, supra, that:
[o]ne who holds a judicial office must adhere to the highest standards of personal conduct. A criminal act for which any citizen may be punished by imprisonment is much more serious when the conduct is that of a judge. Such conduct is clearly prejudicial to the administration of justice and brings the judicial office into disrepute.
See Whitaker, 463 So.2d at 1303.
The judiciary commission argues the fact that respondent was sentenced to imprisonment and a subsequent period of probation automatically brings the judicial office into disrepute. While it is difficult for this court to conceive of a situation where a judge, sentenced to an extended period of incarceration or probation, would not, merely by virtue of that incarceration or probation, bring the judicial office into disrepute, we recognize that incarceration and probation may not always be dispositive of whether a judge's conduct is serious enough to warrant removal from office. Indeed, to so hold would be to surrender our constitutional duty with respect to judicial discipline under La. Const. art. V, § 25(C) to any judge, state or federal, choosing to sentence another judge to imprisonment or probation. Such a result is untenable; therefore, when determining whether a judge's conduct warrants removal from office, this court will not base its decision solely upon the fact that the sentencing judge ordered imprisonment. Rather, this court will, based on the record before the commission, conduct an independent examination of the judge's conduct before imposing discipline. Such a review will ensure that a judge's removal will ensue only from a considered review of the facts and circumstances of the particular case and not merely from the sentence imposing imprisonment.
After conducting such a review of the record in this case, the totality of the circumstances leads us to the inescapable conclusion that respondent's conduct, which included, inter alia, failing to timely file and pay his taxes every year between 1981 and 1992, including 1987, violated Canons 1 and 2 A of the Code of Judicial Conduct and that respondent engaged in persistent and public conduct prejudicial to the administration of *298 justice that brings the judicial office into disrepute. Each day respondent spends as an inmate in federal prison or on active supervised probation after his release from prison can only serve to bring the judiciary into disrepute because of the baneful and odious conduct which led to that imprisonment and probation. Based on the record before us, we conclude respondent violated Canons 1 and 2 A and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Accordingly, we conclude respondent's conduct warrants his removal from office.
As previously discussed, removal of a duly elected member of the judiciary is a serious undertaking which should only be borne with the utmost care so as not to unduly disrupt the public's choice for service in the judiciary. However, this state's constitution vests this court with the duty to preserve the integrity of the bench for the benefit of that same public by ensuring that all who don the black robe and serve as ministers of justice do not engage in public conduct which brings the judicial office into disrepute. The record in this case unequivocally proclaims that respondent engaged in the type of conduct that perniciously erodes public confidence in the integrity of the judiciary, and he must, therefore, be removed from office. As Louisiana's first Chief Justice, Francis Xavier Martin, recognized over a century ago:
All those who minister in the temple of justice, from the highest to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with its obligations.
See State ex rel. Attorney General v. Lazarus, 39 La.Ann. 142, 1 So. 361, 376 (1887), (quoting Martin, C.J.).

LAWYER DISCIPLINE
The determination to remove respondent judge from office has raised the question whether the disciplinary board of the state bar association may bring lawyer disciplinary charges against him as well. In order to serve as a judge, a person must first be admitted to the practice of law in this state. Yet, while he was a district judge, respondent was prohibited from practicing law. 1974 La. Const. art. 5, § 24.
The question of the appropriate discipline for a judge who has been removed from office is not a new one. Previous constitutions have provided various discipline, including removal from judicial office, disqualification from holding public office, and disbarment.
In the Constitutions of 1845, 1852, 1864, 1868 and 1879 there was not any provision disqualifying a judge from holding public office and from practicing law, in the event there was a judgment against him removing him from office. These additional penalties were imposed only in cases where the judge was impeached.
There is provided in Articles 221 of the Constitutions of 1898 and 1913 a three-fold penalty, in cases of removal of a judge from office: (1) Removal from office; (2) disqualification from holding any office of honor, trust, or profit under the State; and (3) disbarment from the practice of law.
In re Meraux, 202 La. 736, 12 So.2d 798, 801 (1943); see also In re Jones, 202 La. 729, 12 So.2d 795, 797 (1943).
In the Constitution of 1921, the framers intentionally and deliberately made the sole penalty for official misconduct of a judge to be removal from office. Only in cases of impeachment were the further penalties of disbarment and disqualification from holding public office imposed. In re Meraux, supra. In In re Meraux and In re Jones, disbarment proceedings were brought against former district court judges for alleged misconduct and unethical acts. The grounds upon which their disbarments were sought were the same as those for which they had been removed from judicial office. The disbarment proceedings were dismissed by this court after finding that the sole constitutional penalty available was removal from office:
There can be no doubt that the failure of the delegates to the Constitutional Convention to repeat in Section 5 of Article IX of the Constitution of 1921 the penalties of disqualification from holding office and disbarment from practicing law as contained *299 in Articles 221 of the Constitutions of 1898 and 1913, where a judge was removed from office for official misconduct, was not an oversight but was deliberate and, therefore, clearly manifests the intention to make divestiture of or removal from office the sole penalty for official misconduct by a judge.
In re Meraux, 12 So.2d at 801; see also In re Jones, 12 So.2d at 797. In dicta the court stated a constitutional amendment was necessary to amend the penalty provisions for removal from judicial office. In re Meraux, supra.
In the 1974 Constitution, the framers made provision that lawyer discipline could be brought against a judge for misconduct. 1974 La. Const. art. 5, § 25(D) provides that "[a]ction against a judge under this Section shall not preclude disciplinary action against him concerning his license to practice law."
Constitutional authority has established separate agencies to administer the conduct of judges and lawyers. Pursuant to 1974 La. Const. art. 5, § 25, which created the judiciary commission and authorized the court to adopt rules pertinent thereto, the court adopted Rule 23, Rules of the Supreme Court, to provide the procedures for all complaints, investigations, hearings, and proceedings before the judiciary commission concerning judges.
Pursuant to 1974 La. Const. art. 5, § 5 and its inherent power, the court adopted Rule 19, Rules of the Supreme Court, to provide rules for enforcement of lawyer discipline and established a statewide agency, the disciplinary board, to administer the lawyer discipline and disability system. Because judges are also lawyers, Rule 19, § 6, Rules of the Supreme Court, describes the jurisdiction of the disciplinary board over former judges and incumbent judges:
B. Former Judges. A former judge who has resumed the status of a lawyer is subject to the jurisdiction of the board not only for conduct as a lawyer but also for misconduct that occurred while the lawyer was a judge and would have been grounds for lawyer discipline, provided that the misconduct was not the subject of a judicial disciplinary proceeding as to which there has been a final determination by the court. Misconduct by a judge that is not finally adjudicated before the judge leaves office falls within the jurisdiction of the lawyer disciplinary agency.
C. Incumbent Judges. Full-time incumbent judges shall not be subject to the jurisdiction of the agency; however, if an incumbent judge is to be removed from office in the course of a judicial discipline or disability proceeding, the court shall first afford the board and the respondent an opportunity to submit a recommendation whether lawyer discipline should be imposed, and if so, the extent thereof.
Once respondent is removed from office, he becomes a "former judge" under Rule 19, § 6(B). As such, he is subject to the jurisdiction of the disciplinary board, but the disciplinary board is precluded from bringing charges against him based on the same misconduct which was the subject of judicial disciplinary proceedings. Since respondent has not yet been removed from office, the first sentence does not apply here.
As an incumbent judge, respondent was not subject to lawyer disciplinary proceedings under Rule 19, § 6(C). Yet because he is to be removed from office in the course of a judicial disciplinary proceeding, the court must afford the disciplinary board and respondent an opportunity to submit a recommendation whether lawyer discipline should be imposed and the extent of that discipline.
The final sentence of Rule 19, § 6(B) and the provisions of Rule 19, § 6(C) appear to try to give effect to the constitutional mandate of 1974 La. Const. art. 5, § 25(D). If the disciplinary board acts before a final adjudication is made of a judge during the proceedings which remove him from his judicial office, then both the judiciary commission and the disciplinary board may bring proceedings against a judge as both a judge and a lawyer. As demonstrated in this case, however, the rules are unworkable within the constraints of the constitutional mandate.
*300 There are different procedural mechanisms for the judiciary commission and the disciplinary board for investigations, hearings, and actions. These procedural mechanisms provide due process to judges and lawyers who are the subject of disciplinary proceedings. As demonstrated in this case, it will not always be possible or advisable to have both judicial and lawyer disciplinary procedures completed prior to submission of a matter to this court.
The record before the judiciary commission is complete and has been submitted to this court. Rule 23, § 12, Rules of the Supreme Court. Oral argument has been held. Rule 23, §§ 14, 15. This court is ready to issue its decision on judicial discipline. There has not been time to implement the procedures of the disciplinary board, yet to delay action on judicial discipline would be a dereliction of this court's duty to police the judiciary. "The purpose of a judicial disciplinary proceeding is not simply to punish an individual judge but to purge the judiciary of any taint." In re Chaisson, 549 So.2d at 267.
Thus, to the extent that Rule 19 §§ 6(B) and 6(C), Rules of the Supreme Court, conflict with 1974 La. Const. art. 5, § 25(D), which directs that "[a]ction against a judge under this Section shall not preclude disciplinary action against him concerning his license to practice law," they must yield to the constitutional provision and must be disregarded. To give effect to the constitutional mandate of 1974 La. Const. art. 5, § 25(D), this court reserves to the disciplinary board the right to institute lawyer discipline proceedings against respondent if appropriate.

DECREE
Accordingly, it is ordered, adjudged, and decreed that respondent, Judge Hilry Huckaby, III, of the First Judicial District Court for the Parish of Caddo, State of Louisiana, be, and is hereby, removed from office; and that his office be, and is hereby, declared vacant. Respondent is cast with all costs of this proceeding and shall pay the Judiciary Commission of Louisiana, pursuant to Supreme Court Rule XXIII, § 22, the sum of $271.50 as reimbursement for out-of-pocket expenses incurred by the commission during its investigation and prosecution of this case. Furthermore, the right of the disciplinary board of the Louisiana State Bar Association to bring lawyer discipline proceedings against respondent under the authority of the La. Const. art. 5, § 25(D) is expressly reserved.
REMOVAL FROM JUDICIAL OFFICE ORDERED; RIGHT TO BRING LAWYER DISCIPLINARY PROCEEDINGS RESERVED.
CALOGERO, C.J., and JOHNSON and WATSON, JJ., dissent and assign reasons.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
LEMMON, Justice, subscribing to the opinion and assigning additional concurring reasons.
I agree with the statement by one of the dissenters that the misconduct which formed the basis of Judge Huckaby's criminal conviction probably would not warrant disbarment if the misconduct of a lawyer were being considered. (I add that such misconduct by a lawyer might not even warrant the maximum suspension of three years if there were sufficient mitigating circumstances.) Nevertheless, higher standards of conduct are demanded of a judge than of an attorney. The public demands that judges scrupulously obey the laws to which the members of the public must conform. Judge Huckaby's flagrant and persistent disregard for the tax laws of the state and country, shown not only by the conduct for which he was convicted, but also by the aggravating circumstance that this misconduct occurred over a substantial period of time, righteously outrage the citizenry of this state. Because Judge Huckaby is presently in jail for criminal conduct which under the totality of circumstances warranted imprisonment, public confidence in the integrity of the judiciary requires that he be removed from office.
CALOGERO, Chief Justice, dissenting.
Judge Huckaby has not been convicted of a felony, nor shown to have committed one. He pled guilty to the misdemeanor crime of *301 failure to file a federal income tax return. This type of guilty plea and its underlying conduct has not heretofore warranted the removal from office of any judge (or disbarment of any lawyer, for that matter).
Judge Huckaby's actions do warrant severe discipline; however, suspension from office until the end of his term, without pay or other emoluments, would be adequate and appropriate discipline. Such punishment would apprise the public that Judge Huckaby has been seriously disciplined for his actions and would prevent Judge Huckaby from serving another day on the bench as an active judge in good standing during the term for which he was elected.
Judge Huckaby's actions demonstrate a disregard for the law which warrants discipline of a serious nature. But he was not guilty of "willful misconduct relating to his official duty," "willful and persistent failure to perform his duty," or "conduct while in office which would constitute a felony, or conviction of a felony." Louisiana Const. Art. 5, § 25(C). Under these circumstances, Judge Huckaby should be suspended without pay or other emoluments for the remainder of his term in office, which is discipline that is significant and appropriate.
WATSON, Justice, dissenting.
The Louisiana Constitution provides, in pertinent part, as follows:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony. [Article 5, Section 25(C).]

* * * * * *
Judge Huckaby's misconduct does not relate to his official duties. He was convicted of a misdemeanor, not a felony. The Constitution implies that only official misconduct, public misconduct or felonious criminal conduct should result in removal from office.
Louisiana has been fortunate in having few cases involving the discipline of judges. In re Whitaker, 463 So.2d 1291, 1303 (La.1985), held that:
The most severe discipline should be reserved for judges who use their office improperly for personal gain; judges who are consistently abusive and insensitive to parties, witnesses, jurors and attorneys; judges who because of laziness or indifference fail to perform their judicial duties to the best of their ability; and judges who engage in felonious criminal conduct.
Judge Huckaby's official conduct has not been questioned. Letters from private citizens and public officials attest to his judicial good conduct. He has not been convicted of a felony. Under the Whitaker guidelines, the most severe discipline is not warranted. See Louisiana State Bar Ass'n v. Ponder, 340 So.2d 134 (La.1976).
The federal trial judge imposed the maximum incarceration sentence for Judge Huckaby's misdemeanor conviction. The severity of the sentence is a disciplinary consideration, because a judge being in jail is inconsistent with judicial service. However, an argument could be made on both sides of the question whether being in jail for a misdemeanor is persistent, public misconduct. Compare In re Haggerty, 257 La. 1, 241 So.2d 469 (1970), which epitomizes public misconduct.
Judge Huckaby's offense does not fall within the constitutional or jurisprudential guidelines for removal from office. Nevertheless, because of the serious nature of Judge Huckaby's misconduct, he should be suspended without pay for the remainder of his term of office, that is, until December 31, 1996, which is the heaviest sanction short of removal.
I respectfully dissent.
JOHNSON, Justice.
I respectfully dissent.
Fairness and equity dictate that we treat this judge in the same manner we have treated other members of the judiciary in similar *302 circumstances. We have never removed a judge from office for a MISDEMEANOR conviction. A misdemeanor by definition, is a less serious criminal offense, therefore the discipline imposed should be less severe than that imposed for a felonious offense.
This court stated in In re Whitaker, 463 So.2d 1291 (La.1985), that:
"The most severe discipline should be reserved for judges who use their offices improperly for personal gain; judges who are consistently abusive and insensitive to parties, witnesses, jurors and attorneys; judges who because of laziness or indifference fail to perform their judicial duties to the best of their ability; and judges who engage in felonious criminal conduct."
In Whitaker, respondent (Judge of the Tenth JDC) was found by this court to have smoked marijuana on two occasions after becoming judge. His actions violated La. R.S. 40:966 D (possession of marijuana). A second offense as defined by the statute is a felony. Although Judge Whitaker clearly engaged in felonious conduct, this court chose to only suspend him from office for one year without salary.
The evidence in the instant case shows that Judge Huckaby plead guilty to the federal misdemeanor of failing to file his federal income tax return, thus violating 26 U.S.C. § 7203. Turning to the parameters that warrant "severe" discipline, his failure to file a tax return does not remotely resemble the actions of a judge engaged in the consumption of an illegal drug. Moreover, Judge Whitaker was accused of associating with prostitutes and individuals who were users and sellers of illegal drugs, even after taking his judicial oath.
There was no accusation that Judge Huckaby used his office for personal gain. Also, there was nothing to indicate that he was abusive or insensitive to any individual appearing before him. In fact, the record contained letters from no less than twenty (20) community leaders, attorneys, educators and other professionals praising the services rendered by him. Similarly, nothing has been shown indicating that he failed to perform his judicial functions to the best of his ability. Finally, it should be reiterated that respondent's failure to file his tax return was not felonious, but a misdemeanor.
Another significant point which surfaces when these cases are compared is that this court considered certain factors as mitigating circumstances when it decided to give Judge Whitaker "a slap on the wrist" for his intentional role in illegal drug activity. This court found as mitigating factors, the fact that the illegal drug did not belong to respondent, and that the felonious conduct was "relatively private". Here, the majority seemed to ignore that Judge Huckaby was under tremendous financial restraints, suffered from high blood pressure, and experiencing marital difficulties. Also, the previously mentioned numerous character letters attest to the positive contributions he made to his community. The American Bar Association (ABA) Standards for imposing sanctions against its members lists all of these factors as mitigating circumstances that might justify a reduction in the degree of discipline to be imposed. See ABA Standard 9.32. Because we determined that certain mitigating factors were present in Whitaker, fundamental fairness mandates that, at the very least, the same criteria be applied where the commission of a misdemeanor occurs.
Clearly, the violations committed by Judge Huckaby do not warrant the severe discipline as the majority concludes, namely, removal from office. It is unfortunate that Judge Donald E. Walter of the U.S.D.C. for the Western District of Louisiana chose to deal so harshly in sentencing Judge Huckaby. There have been few cases where an individual has been convicted under 26 U.S.C. § 7203, and where convicted the usual penalty has been a suspended sentence and probation. [See Neidinger v. U.S., 647 F.2d 408 (4th Cir.1981) certiorari denied, 454 U.S. 859, 102 S.Ct. 311, 70 L.Ed.2d 155], where the defendant who was initially sentenced to one-year imprisonment for failing to file federal tax returns was given a modified sentence allowing immediate probation off two years and required that he reside in half-way house for 60 days on work release; U.S. v. Campbell, 619 F.2d 765 (8th Cir.1980) where the defendant was convicted to three counts of failing to file federal taxes, sentenced to a *303 three years prison term with all but six months suspended, and given a fine of $500.00 for each count; and U.S. v. Overton, 359 F.2d 28 (4th Cir.1965), where the defendant was convicted on three counts of failing to file his federal tax returns and was ordered to serve three months in prison. Although Overton and Campbell involved multiple counts, both defendants were sentenced to fewer months in prisons. These matters could have served as a sentencing reference, however Judge Walter decided that probation was not appropriate, nor was a reduced prison term. Based on the cited jurisprudence, this court should not have deviated from its own guidelines and because it did, I cannot support the conclusions of the majority.
NOTES
[*] Judge Charles R. Lindsay, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore sitting in place of Associate Justice James L. Dennis, not on panel. Rule IV, § 3.
[1] The record of the proceedings in the judiciary commission states that Judge Huckaby took office on January 4, 1993, but he actually "took office" on January 1, 1993.
[2] Respondent actually pled guilty on June 30, 1994.
[3] We recognized in Whitaker that a judge's conduct before he assumes office cannot form the "sole basis" for disciplinary proceedings before the commission. See Whitaker, 463 So.2d at 1294. However, in this case, it is undisputed that respondent's conduct continued through his assumption of judicial office. Therefore, because the charge against him is not based solely on pre-judicial conduct, respondent's pre-judicial conduct, in this case, can be used to determine the appropriate measure of discipline because that conduct was proven by clear and convincing evidence.